Cheshire,
No. 5155.

AMERICAN FIDELITY COMPANY

*v.*

EUGENE P. CRAY *& a.*

Argued October 2, 1963.
Decided November 5, 1963.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *T. William Bigelow* (*Mr. Bigelow* orally), for the plaintiff.

*Bell & Bell* and *Peter S. Espiefs* (*Mr. Espiefs* orally), for the

defendants, *Eugene P. Cray* and *Paul Cray* d/b/a Cray Oil Company.

*William Maynard*, Attorney General, and *Alexander J. Kalinski*, Assistant Attorney General, for the State of New Hampshire, furnished no brief.

*Francis G. Moulton* for Kenneth E. Curran, Inc., furnished no brief.

LAMPRON, J.   RSA 447:16 provides in part that officers who contract in behalf of the State for the construction of public highways shall "obtain as a condition precedent to the execution of the contract, sufficient security by bond or otherwise . . . conditioned upon the payment by the contractors and subcontractors for all labor performed or furnished . . . for all material used and for fuels, lubricants . . . and supplies purchased by said principal and used in carrying out said contract."

On March 24, 1958, the plaintiff issued a contract bond as surety.   The principal was LaClair Bros. Construction Inc., under a contract with the State of New Hampshire to rebuild the Lincoln-Livermore highway.   In addition to the obligation of the principal to perform all agreements, terms and conditions in the contract and to pay all lawful taxes, this bond was conditioned on the payment by the principal of all the items enumerated in the above statute "this agreement to make such payment being in compliance with the requirements of Revised Statutes Annotated 447:16 to furnish security thereunder and being in fact such security."

RSA 447:17 provides that to obtain the benefit of the bond a claimant for labor performed or materials furnished "shall within ninety days after said claimant ceases to perform said labor or furnish said materials . . . file . . . with the department of public works and highways . . . a statement of the claim;   a copy of which shall forthwith be sent by mail by the office where it is filed to the principal and surety."

Section 18 of this chapter provides in part that "said claimant shall, within one year after filing such claim, file a petition in the superior court for the county within which the contract shall be principally performed to enforce his claim . . . with a copy to the principal and surety, and such further notice as the court may order."

· LaClair shut down the job for the winter on October 24, 1958, moved its equipment off the project on October 27 next, and never performed any work thereafter. It was estimated at that time that LaClair had completed 74% of the construction but it subsequently developed that it had performed 64% of the final amount on a dollar basis.

May 12, 1959, American Fidelity Company notified the State that LaClair was unable to perform. American completed the contract through its agent, Weaver Bros. Construction Co. This work started May 25, 1959, and the project was accepted October 9, 1959. The plaintiff, American, expended $196,016.38 to complete the contract. It has received $81,233.33 from the State and the balance of $7,000 due from the State has been deposited in court.

During the period from May 27, 1958, to about November, 1958, when LaClair was on the job, Cray Oil Company supplied fuels and lubricants to LaClair used in carrying out this project. Cray alleges it is owed therefor a balance of $4,009.82. It filed its claim with the Department of Public Works and Highways on May 29, 1959, and commenced an action against the plaintiff American for this balance by writ dated March 3, 1961. Cray states in its brief that it brought a suit against LaClair for this amount by writ dated July 6, 1959, which action was continued for judgment after LaClair was defaulted.

The claim of Kenneth E. Curran, Inc., in the amount of $272.07 is for services performed for LaClair on this project during the month of October, 1958. It filed a claim with the Department of Public Works and Highways by letter dated May 12, 1959, but has never brought a suit to collect its claim.

Defendant Cray first contends that because the bond issued by American contains obligations which are broader than those required by RSA 447:16 it is not a statutory bond and may be sued upon as a valid common-law obligation even if the requirements of RSA 447:17, 18, are not complied with.

American's bond in addition to securing the performance by LaClair of all the obligations required by the statute also guaranteed that LaClair would perform its contract with the State, pay all lawful taxes and save the State harmless against all claims and suits for damage to person or property resulting from its negligence. It also had many more obligations not contained in the statute.

This court held in *Petition of Keyser*, 97 N. H. 404, 407, that

if a surety undertook extrastatutory provisions claims arising under those obligations could be enforced as valid common-law obligations without the need of complying with the requirements as to notice and the filing of a claim provided in RSA 447:18. *Robinson Clay Products Co.* v. *Beacon Const. Co.*, 339 Mass. 406. However Cray's claim arises not under an extrastatutory obligation by American but from its obligation to guarantee the payment of fuels and lubricants which is specifically required by the statute and undertaken by American as such an obligation.

Furthermore, unlike the bond in the *Keyser* case we find no provision in this bond which could be construed to give Cray rights in addition to or independent of those provided by the statute. There is no provision in this bond which could be interpreted, as were those in the *Keyser* case, to constitute a waiver by American of the statutory requirements that notice shall be given within ninety days after the claimant ceases to perform labor or furnish material and that a petition shall be filed within one year (*ss.* 17, 18, *supra*). *Therrien* v. *Maryland Cas. Co.*, 97 N. H. 180. The statute creates Cray's rights and it follows that they can only be enforced by the means specified by it. *Petition of Keyser, supra,* 409. This is also true of the claim of Kenneth E. Curran, Inc.

Cray maintains further, however, that even if its rights are statutory it has complied substantially with the requirements of the statute and should be permitted to recover. In the words of its brief "It is the contention of Cray Oil Company that the shut down of the job because of early winter in October, 1958, did not amount to a *cessation* to furnish fuels and lubricants. Cray's undertaking under the above agreement with LaClair Bros. was a *continuing* one so long as LaClair was connected with the Lincoln-Livermore project. Certainly it cannot be said that during the seasonal hiatus there was a *cessation* within the meaning and intent of the statute."

Statutory requirements that notice of claim must be filed within a specified period after the cessation of work or the last furnishing of services or materials have been criticized as unsatisfactory. 3 Powell, Real Property, *s.* 487, *p.* 738, note 59. This consideration probably prompted the amendment to RSA 447:17 which fixes the ninety-day period within which to file a claim "after the completion and acceptance of the project by the contracting party." Laws 1961, 230:1. However, this

change became effective August 29, 1961, and does not apply to this case.

Failure to comply with the statutory requirements that a statement of claim shall be filed with a designated party "within ninety days after said claimant ceases to perform said labor or furnish said materials" (RSA 447:17) and that "said claimant shall, within one year after filing such claim, file a petition . . . to enforce his claim" (*Id., s.* 18) is usually held fatal. *Tolles-Bickford Co.* v. *School*, 98 N. H. 55, 57. These periods are not extended by insolvency or breach of contract. *Id.,* 58.

The parties agree that LaClair performed no work subsequent to October 24, 1958, and that Cray furnished fuels and lubricants from May 27, 1958 to November, 1958 only. They further agree that Cray did not file a statement of claim with the Department of Public Works and Highways until May 29, 1959. This filing was about 180 days after Cray ceased to furnish fuels and lubricants instead of within 90 days as required by statute (*s.* 17). Cray did not file a petition in Superior Court to enforce its claim until March 3, 1961, over 8 months beyond the one-year period within which it was required to, file (*s.* 18). We cannot accept Cray's contention that it ceased to furnish materials not in November 1958, after which date no materials were in fact furnished, but the following spring when LaClair failed to resume operations. This is contrary to the actual facts. Nor can we adopt its suggested doctrine of substantial compliance with the statutory requirements. Our law is well settled that in giving statutory notice the requirements of the statute must be strictly observed. *Poirier* v. *Company*, 84 N. H. 461, 462; *Tolles-Bickford Co.* v. *School*, 98 N. H. 55, 57.

Cray's final contention is that, even if it is barred from enforcing its claim on the bond for its failure to comply with the statutory requirements of notice and suit, American is nevertheless obligated to pay it under the equitable doctrine of restitution for the benefit and advantage it obtained from the fuels and lubricants supplied by Cray to LaClair.

It is agreed by the parties that after LaClair's default, American expended $196,016.38 to complete this highway for which the State is obligated to pay $88,233.33. It is further agreed that American's records do not indicate that any of the fuels and lubricants originally supplied by Cray to LaClair were used by Weaver Bros., American's agent in the completion of the

work, or by any other person or corporation which contracted with American to complete the highway. However, Cray argues that the State had retained money for work done on the contract by LaClair which American will receive if the balance owed by the State is paid to it. It maintains that some of this work performed by LaClair was done with fuels and lubricants furnished by Cray and American would be unjustly enriched at the expense of Cray if it received the benefit of its products without having to pay for them.

Assuming that American is receiving a benefit from the products furnished by Cray to LaClair this is not sufficient in itself to impose a duty of restitution on American. It is evident that American is suffering a substantial loss since it will be reimbursed less than half of its cost of completing the highway. Cray's contention is that this loss will be lessened as a result of work which LaClair performed by the use of its products. However, Cray has not been paid or does not have a priority on these funds because it failed to present its claim in accordance with the requirements of RSA 447:17, 18. To permit it to recover nevertheless would be to circumvent this statute. It is not unjust or unlawful for American to retain the benefit it will receive by the failure of the claimants, Cray Oil and Curran, to exercise their statutory rights through no fault of American. *American University* v. *Forbes*, 88 N. H. 17; *Follett* v. *Ramsey*, 101 N. H. 347, 350.

Neither Eugene P. Cray and Paul Cray d/b/a Cray Oil Company nor Kenneth E. Curran, Inc. has any right in the balance of $7,000 due on the contract between the State of New Hampshire and LaClair Bros. Construction Inc. and a decree should be made to that effect.

*Remanded.*

All concurred.