USCA1 Opinion

 

 March 25, 1994 NOT FOR PUBLICATION NOT FOR PUBLICATION UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1970 BROX INDUSTRIES, INC., Plaintiff, Appellee, v. H.J. STABILE & SONS, INC. ET AL., Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Martin F. Loughlin, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Selya, Circuit Judge. _____________ ____________________ James E. Owers, with whom Sulloway & Hollis was on brief for _______________ __________________ appellant Reliance Insurance Company and Morgan A. Hollis, with whom ________________ Gottesman & Hollis was on brief for appellant H.J. Stabile & Sons, __________________ Inc. Frank P. Spinella, Jr., with whom Hibbard & Spinella, P.A. was on ______________________ _________________________ brief for appellee. ____________________ ____________________ BOWNES, Senior Circuit Judge. This diversity BOWNES, Senior Circuit Judge. _____________________ case requires us to rule on the timeliness of a notice of claim under a payment bond. The district court, after an evidentiary hearing, held that the notice was timely and therefore granted judgment for plaintiff-appellee Brox Industries in the amount of $178,155.86. We affirm. I. I. BACKGROUND BACKGROUND __________ We set forth a summary of the pertinent facts found by the district court. In June 1991 defendant-appellant H.J. Stabile & Son, Inc. entered into a contract with Wal-Mart Stores, Inc. to build a store in Seabrook, New Hampshire. In July 1991 Stabile obtained a payment bond from co-defendant- appellant Reliance Insurance Company. Reliance, of course, is the real party in interest. Stabile subsequently subcontracted with Atom Contracting Corp. to do work on the Wal-Mart project. Atom then subcontracted with Brox to do both on-site and off-site paving. Under Stabile's contract with Wal-Mart all work was to be completed on the project by December 3, 1991. By mid- December Brox had not completed a substantial portion of the paving work under its contract with Atom. On December 13 Stabile instructed Brox that it should cease operations on the project due to the onset of winter. Because all of the parties recognized that paving cannot be done properly in the -2- 2 winter, they agreed that Brox would return the following spring to complete the work. Stabile fully expected that Brox would return to the work-site in the spring, and Brox anticipated doing so. On December 23, 1991 Brox notified Stabile that substantial work remained for the spring, provided Stabile with an estimate of the remaining work, and stated that the total amount of the paving work performed to date was $201,106.50. Brox invoiced Atom for this work in December 1991. In February and March 1992, in response to concerns of Wal-Mart about the quality of Brox's paving, Brox conducted tests of its work. Also in March 1992, a Brox employee filled in several potholes at the worksite in preparation for returning to the project. By March of 1992 Stabile had paid Atom all sums due for work performed by Atom and its subcontractors, including Brox. Atom, however, still owed Brox $178,155.86 for work done through December 13, 1991. On March 18, 1992 Brox sent a notice of claim for that amount to Reliance as surety for Stabile. Nonetheless, Brox anticipated that it would finish the paving work in the spring under its contract with Atom. On May 14, 1992 Atom informed Stabile that it intended to honor their contract, and that the State of New Hampshire wanted two roads, which were contiguous to the planned store, to be paved by June 1. On June 4 Stabile -3- 3 agreed to the additional paving with a charge back to Atom. Although the specifics are unclear, shortly thereafter Stabile recognized that Atom would be unable to meet its contractual obligations, and therefore it sought to engage a new contractor to complete the paving work. On June 11, after a brief bidding period, Stabile and Brox entered into two contracts for the completion of the paving at the project, one for on-site and one for off-site work. On June 30 Stabile formally terminated its contract with Atom. Brox finished the paving work at the project. In August 1992 Brox commenced a diversity action in the United States District Court for the District of New Hampshire against Stabile and Reliance seeking payment under the bond issued by Reliance as surety for Stabile. Under the bond, a party not in direct privity with the principal, such as Brox, must give notice of its claim to: the Principal, the Surety, or the Owner, "within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made." No claim is made that Brox failed to give notice as required to the Principal, Surety or Owner. The principal defense of Stabile and Reliance is that Brox's March 18, 1992 notice was untimely under the bond's requirements. Brox moved for summary judgment based on two alternative theories. It argued first that, assuming -4- 4 arguendo that its notice was untimely, Reliance must show ________ prejudice from the tardiness in order to bar recovery under the bond. According to Brox, no prejudice could be shown. Alternatively, Brox maintained that its notice was timely under the bond. The district court, in an opinion dated August 18, 1993, found that Brox's notice was timely. According to the district court, "[t]he crux of the case . . . appears to be whether [Brox's] work [was] completed in December, 1991." Brox Industries, Inc. v. H.J. Stabile & Son, Inc., No. 92- ______________________ __________________________ 426-L, slip op. at 6 (D.N.H. August 18, 1993). At the evidentiary hearing the court stated that "[i]f . . . an agreement [about a winter hiatus] was made then clearly [Brox's] work under its subcontract with Atom was not completed on December 13, 1991 and [Brox's] failure to give notice within ninety days of that day would not bar recovery under the bond." Because the court eventually found that Brox still had substantial work to do on the contract as of December 13, and that the parties agreed to a winter hiatus of greater than ninety days, it held that Brox's notice was not untimely. Id. at 7. ___ In response to Brox's argument that work done at the project site in February and March 1992, i.e., quality ____ tests and pothole repairs, reset the ninety-day notice period, the district court found that both the tests and the -5- 5 pothole repairs were remedial in nature and did not "advance the completion of the project." Id. at 5. Accordingly, ___ under New Hampshire law, the district court found that the above work had no effect upon the ninety-day notice period. See Tolles-Bickford Co. v. School, 94 A.2d 374 (N.H. 1953). ___ ___________________ ______ This conclusion and its predicate factual findings have not been appealed. The court entered judgment for Brox for the full amount of its claim, and defendants appealed. II. II. DISCUSSION DISCUSSION __________ The focus of this litigation has been twofold: (1) whether, given the circumstances surrounding Brox's work on the project, its notice of March 18, 1992 was timely under the bond issued by Reliance; and (2) whether, if the notice was not timely, Reliance must demonstrate prejudice from the delay in order to bar Brox's recovery. Because the district court ruled in the affirmative on the first issue, it never reached the second. Because this is a diversity action, the substantive law of the forum attaches. Erie R.R. Co. v. Tompkins, 304 ______________ ________ U.S. 64, 78 (1938). The parties' arguments as to the timeliness of Brox's notice hinge upon two New Hampshire Supreme Court cases. In American Fidelity Co. v. Cray, 194 A.2d 763 ______________________ ____ (N.H. 1963) a claimant on a payment bond was precluded from -6- 6 recovering due to late notice of claim. The principal in Cray was under a contract with the State of New Hampshire. ____ It was required by statute to obtain a contract bond, and the bond's notice requirement was prescribed by statute. Under the version of N.H. RSA 447:17 in effect at that time, in order to obtain the benefit of the bond, a claimant for labor performed or materials furnished "shall within ninety days after said claimant ceases to perform said labor or furnish said materials . . . file . . . with the department of public works and highways . . . a statement of the claim." From May to November 1958, Cray provided fuel and lubricants to the principal on a highway construction project. In late 1958, prior to the completion of the project, the principal shut down the job for the winter. It never returned. In the spring of 1959 the surety completed the project through another construction company. In May 1959 Cray noticed a claim with the proper authority for money owed to it by the principal. Although Cray did not provide any materials to the principal after November 1958 -- more than ninety days prior to its filing a claim under the bond -- Cray maintained that it did not "cease" to furnish fuel and lubricants under the bond at the time of the winter shutdown in November 1958. Cray argued that its agreement with the principal was a continuing one such that the ninety day notice requirement -7- 7 should have been tolled during the seasonal hiatus. After reviewing the facts of the case, the New Hampshire Supreme Court stated: We cannot accept Cray's contention that it ceased to furnish materials not in November 1958, after which date no materials were in fact furnished, but the following spring when LaClair failed to resume operations. Id. at 766. Defendants argue that Brox is in the same ___ position as Cray was, and that its notice is therefore untimely. Defendants' position is substantially undercut by the New Hampshire Supreme Court's subsequent opinion in New ___ England Metal Culvert Co. v. A.E. Williams Construction Co., _________________________ ______________________________ 196 A.2d 713 (N.H. 1963). In New England Metal Culvert the _________________________ contractor on a highway construction project placed a single order with the plaintiff in January 1961 for various materials, including a metal culvert and pipe. As was the case in Cray, the contractor was under contract with the ____ State, and was required by statute to obtain a bond.1 Delivery of the pipe was to be "as required." Id. at 714. ___ On April 25, 26 and 27, 1961 a metal culvert was delivered, but the contractor was not ready to receive the pipe, and it was not delivered. In October 1961, after learning that the ____________________ 1. On April 29, 1961 the notice requirement contained in RSA 447:17, see supra p. 7, was amended to require such a filing ___ _____ "within ninety days after the completion and acceptance of the project." -8- 8 contractor was in financial straits, the plaintiff filed a notice of claim under the bond for payment of the materials that it had delivered in April. The contractor subsequently defaulted on the project, and the surety completed construction through a different construction company. In December 1961 a new construction company was hired by the surety to finish the job. This new company ordered the exact same pipe from the plaintiff that had been ordered by, but never delivered to, the original contractor. Id. The pipe ___ was delivered by plaintiff to the new contractor on December 13 and 15, 1961 and was paid for in a timely manner. The court ruled that plaintiff's October 27, 1961 notice was timely under the pre-amendment version of the notice statute. Id. at 715. This conclusion was based on ___ two factors. First, the contract between plaintiff and the original contractor "was a single contract although separable or divisible as to deliveries." Id. And second, "[o]n ___ October, 27, 1961, when the plaintiff first gave notice of its claim, although more than ninety days had elapsed since delivery of the culvert it had not then ceased to furnish materials, but was bound by its [original] contract to make additional deliveries on request." Id. Moreover, ___ the remaining pipe was furnished to the job on December 13 and 15, 1961 for use in carrying out the contract with the State. Thus the plaintiff did not cease to furnish materials within the meaning of RSA 447:17 until December 15, 1961 . . -9- 9 . . Unlike the situation in American ________ Fidelity Co. v. Cray, supra, the ______________ ____ _____ plaintiff in this case had a single contract for a series of deliveries of specified materials. Id. (citation omitted). The court concluded that "[a] ___ notice filed within ninety days of the last delivery on December 15, 1961 would have constituted compliance with the requirements of the statute before amendment, and permitted recourse to the bond for recovery of the price of the culvert delivered in April 1961." Id. The court further held that ___ although plaintiff's filing was premature, the premature notice satisfied the notice requirement. Id. at 716. ___ Brox argues that it is similarly situated to the plaintiff in New England Metal Culvert, and that its notice _________________________ was therefore timely. We agree. As in New England Metal __________________ Culvert, Brox had a single contract with Atom. At the time _______ Brox gave notice of its claim, more than ninety days had passed since its last paving work on the project. Nevertheless, at the time Brox gave its notice, it was still obligated to complete the paving work after the spring thaw. Brox eventually completed the paving work necessary for carrying out Stabile's contract with Wal-Mart. These factors, we believe, place this case squarely under the shadow cast by New England Metal Culvert.2 _________________________ ____________________ 2. The district court also found, consistent with New ___ England Metal Culvert, that Brox's notice was, in effect, ______________________ prematurely filed. Brox Industries, Inc. v. H.J. Stabile & ______________________ ______________ -10- 10 Accordingly, under the rule articulated by the New Hampshire Supreme Court in New England Metal Culvert, if a __________________________ claimant is still obligated to perform additional work under its original contract at the time notice is given under a payment bond, such as the one at issue here, the notice is not untimely even if more than ninety days have passed since the last work was performed by the claimant under the original contract. In effect, the claimant's notice can be viewed as covering the claimant's prior work, for which it has not been paid, as well as the work that it is obligated to perform in the future -- work for which it has also not yet been paid. The ninety-day notice period does not begin to run until the claimant actually completes the work that it was contractually obligated to perform at the time notice was given. Thus, as the New Hampshire Supreme Court has noted, although the claimant's notice is premature, it is valid. At oral argument Reliance sought to distinguish New ___ England Metal Culvert on the ground that one contract was at ______________________ issue in that case whereas two contracts are implicated in the present case. Defendants' contention is not persuasive. It is clear, as in the present case, that the plaintiff in New England Metal Culvert completed its performance, i.e., __________________________ ____ made the December 13 and 15 pipe deliveries, under a second ____________________ Son, Inc., slip op. at 7. _________ -11- 11 contract which required completion of the performance called for under the original contract. Id. at 714. ___ Although New England Metal Culvert involves a ____________________________ statutory notice requirement, as opposed to a contractual requirement, we can see no reason why the New Hampshire Supreme Court's interpretation of the former would not apply to the latter. See, e.g., Raitt v. National Grange Ins. Co., ___ ____ _____ ________________________ 285 A.2d 799 (N.H. 1971) (contractual subrogation provision construed consistently with identical statutory subrogation right). In fact, the notice requirement at issue here is identical to the Miller Act's ninety-day notice requirement, and the New Hampshire Supreme Court has looked to Miller Act cases in construing the pre-amendment version of RSA 447:17. See New England Metal Culvert, 196 A.2d at 715 (citing ___ ___________________________ cases). Aside from the two New Hampshire cases discussed above, the parties have focussed their attention on cases construing the ninety-day notice requirement in the Miller Act, 40 U.S.C. 270b(a). Because we have found controlling precedent under New Hampshire law, we need not delve into these cases. Nevertheless, we note that the Miller Act cases are not hostile to our holding. On the question of ninety-day gaps between performances, we have uncovered only a handful of cases. Those cases have held, where there is a break of greater than -12- 12 ninety days between deliveries under a series of purchase ___________________ orders, that the last delivery does not resurrect claims for ______ payment for the earlier deliveries. See United States v. ___ ______________ Peter Reiss Constr. Co., 273 F.2d 880 (2d Cir. 1959) __________________________ (Friendly, J.). This was essentially the issue in Cray, and ____ the court there reached the same conclusion. Of course, in Cray, the plaintiff never made any deliveries after the ____ ninety-day plus hiatus. On the other hand, where work is performed under a contract, as opposed to a series of purchase orders, a greater than ninety-day interval in performances will not bar recovery on the earlier performance despite the absence of immediate notice. See Id. at 882; ___ ___ United States v. Chester Constr. Co., 104 F.2d 648 (2d Cir. _____________ ____________________ 1939). This was the situation in New England Metal Culvert, _________________________ and the New Hampshire Supreme Court reached the same result. The three Miller Act cases relied on by defendants in their brief would not warrant a contrary conclusion. The first case, United States ex rel. J.A. Edwards & Co. v. ____________________________________________ Thompson Constr. Corp., 273 F.2d 873 (2d Cir. 1959), ________________________ concerned the substance of a notice of claim under the Miller Act, not its timeliness under the ninety-day notice requirement. And the last two cases, United States ex rel. ______________________ John D. Ahern Co. v. J.F. White Contracting Co., 649 F.2d 29 _________________ __________________________ (1st Cir. 1981) and A.B. Cooley v. Barten & Wood, Inc., 249 ____________ ____________________ F.2d 912 (1st Cir. 1956), although more closely analogous to -13- 13 the instant case, do not involve gaps in the claimant's performance of greater than ninety days, and are therefore of limited relevance. This is particularly true given the New Hampshire Supreme Court's clear statement in this matter. Defendants' have failed to identify, and we cannot decipher, any substantive distinction between New England ____________ Metal Culvert and the case at bar. Accordingly, the judgment _____________ of the district court is Affirmed. Affirmed ________ -14- 14