Hillsborough-northern judicial district
Nos. 2009-102
　　2009-103

GENERAL INSULATION COMPANY

v.

ECKMAN CONSTRUCTION *& a.*

Argued: October 15, 2009
Opinion Issued: January 28, 2010

602

*Sherman Law, PLLC*, of Portsmouth (*John P. Sherman* on the brief and orally), for the petitioner.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Thomas J. Donovan* and *Michael J. Kenison* on the brief, and *Mr. Kenison* orally), for respondents Eckman Construction, Northern Peabody, LLC and North American Specialty Insurance Company.

*Devine, Millimet & Branch, P.A.*, of Andover, Massachusetts (*George R. Moore* and *Anthony S. Augeri* on the brief, and *Mr. Moore* orally), for respondents Youngblood Co., Inc. and International Fidelity Insurance Company.

DUGGAN, J. The petitioner, General Insulation Company, appeals from an order of the Superior Court (*Abramson*, J.) granting the motions to dismiss filed by respondents Eckman Construction (Eckman), Northern Peabody LLC (Northern Peabody), North American Specialty Insurance Company (North American), Youngblood Co., Inc. (Youngblood) and International Fidelity Insurance Company (International Fidelity) (collectively, the moving respondents). The trial court dismissed the petitioner's petitions to enforce statutory performance bonds because the petitioner failed to provide the respondents with copies of the petitions within one year of filing its claims as required by RSA 447:18 (2002). *See* RSA 447:16, :17 (Supp. 2009). The court also dismissed the petitioner's alternative claims for unjust enrichment/restitution and quantum meruit because the petitions failed to allege sufficient facts to support them. We affirm and remand.

## I. Background

The record evidences the following facts. The petitioner claims that the respondents did not pay for insulation and related materials it supplied to respondent R & H Enterprises d/b/a Advanced Insulation (Advanced Insulation) for a bonded project known as "Bedford Middle/High School Project" in Bedford. Eckman was the general contractor on the project. Northern Peabody and Youngblood were subcontractors to Eckman; Advanced Insulation was a subcontractor to Northern Peabody and Youngblood. According to the petitioner, North American was the surety on the statutory performance bond issued to Northern Peabody, and International Fidelity was the surety on the statutory performance bond issued to Youngblood. *See* RSA 447:16.

On March 15, 2007, the petitioner filed a notice of claim in superior court pursuant to RSA 447:17. It amended this notice of claim on May 3, 2007. On March 6, 2008, the petitioner filed petitions in superior court to enforce the statutory bonds and to assert common law claims for unjust enrichment/ restitution and quantum meruit. *See* RSA 447:18. The petitioner did not provide the respondents with copies of its petitions, however, until August 2008, after the court issued orders of notice to the respondents. *See id; see also* SUPER. CT. R. 124. The moving respondents moved to dismiss the petitions, which the trial court granted, and this appeal followed. Advanced Insulation did not join the motions to dismiss filed by the other respondents and did not separately file a motion to dismiss. Accordingly, the petitioner's petitions against Advanced Insulation remain pending and we express no opinion as to their validity.

## II. Discussion

### A. Compliance with RSA 447:18

#### 1. Standard of Review

The petitioner first argues that the trial court erroneously interpreted RSA 447:18 to require it to send copies of its petitions to the moving respondents within one year of filing its claim under RSA 447:17. We review the trial court's statutory interpretation *de novo. Chesley v. Harvey Indus.,* 157 N.H. 211, 213 (2008).

We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Appeal of Parkland Med. Ctr.,* 158 N.H. 67, 72 (2008). We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meaning to the words used. *Id.* When a statute's language is plain and unambiguous, we need not look

beyond it for further indication of legislative intent, and we will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We also interpret a statute in the context of the overall statutory scheme and not in isolation. *Liam Hooksett, LLC v. Boynton*, 157 N.H. 625, 628 (2008). Additionally, we do not consider words and phrases in isolation, but within the context of the statute as a whole. *Franklin Lodge of Elks v. Marcoux*, 149 N.H. 581, 585 (2003). This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. *Id.*

### 2. Overview

■ We begin with a brief general discussion regarding bonds issued for public works projects and the statutory scheme that governs such bonds. "A bond is a three-party instrument by which one party (the surety) guarantees or promises a second party (the owner or general contractor) the successful performance of contract obligations owed to the second party by its principal (the contractor or subcontractor)." 3 S. STEIN, CONSTRUCTION LAW Appendix 9J, at App. 9-27 (Sept. 2006). Three kinds of bonds are common in construction: bid bonds, performance bonds, and payment bonds. *Id.* A bid bond guarantees that the bidder will enter into the contract for the bid amount. *Id.* "A performance bond guarantees to the owner that a prime contractor will perform according to the contract referenced in the bond." *Id.*; *see Wolfeboro Neck Prop. Owners Assoc. v. Town of Wolfeboro*, 146 N.H. 449, 453 (2001). "A payment bond assures the owner that the prime contractor will pay its subcontractors and suppliers, who might otherwise file liens against the owner's property." 3 STEIN, *supra* at App. 9-27. "A performance bond is one exacted for the protection of the public body to guarantee completion of a project," while "[a] payment bond is exacted for the protection of materialmen, suppliers, and laborers who otherwise might be without recourse for payment of their claims against the municipality." 14 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LOCAL GOVERNMENT LAW § 789, at 45 (1995). In New Hampshire, "[a]ny municipal contracts, especially capital building contracts, must have provisions requiring the posting of performance and/or payment bonds." *Id.* "Performance and payment bonds can be separate documents or may be combined." 3 STEIN, *supra* at App. 9-27.

RSA 447:16 to :18 govern bonding for public works projects. Although it appears that these statutes only apply to payment bonds, *see* LOUGHLIN, *supra* § 789, at 46, no party argues that they do not govern the bonds at

issue even though the petitioner characterizes them as performance bonds. We, therefore, assume for the purposes of this appeal that RSA 447:16 to :18 govern the bonds at issue.

■ RSA 447:16 provides:

> Officers, public boards, agents or other persons who contract in behalf of the state or any political subdivision thereof for the construction, repair or rebuilding of public buildings, public highways, bridges or other public works shall if said contract involves an expenditure of $25,000, and may if it involves an expenditure of less amount, obtain as a condition precedent to the execution of the contract, sufficient security, by bond or otherwise, in an amount equal to at least 100 percent of the contract price, or of the estimated cost of the work if no aggregate price is agreed upon, conditioned upon the payment by the contractors and subcontractors for all labor performed or furnished, for all equipment hired, including trucks, for all material used and for fuels, lubricants, power, tools, hardware and supplies purchased by said principal and used in carrying out said contract, and for labor and parts furnished upon the order of said contractor for the repair of equipment used in carrying out said contract. .

The purpose of this provision, which was first enacted in 1927, is "to furnish an alternative security to lienors, in general more practically adapted to protect them and at the same time to save the state or municipality from annoyance." *Petition of Keyser*, 97 N.H. 404, 407 (1952) (quotation omitted); *Guard Rail Erectors Inc. v. Company*, 86 N.H. 349, 350 (1933).

■ To obtain the benefit of bonds issued pursuant to RSA 447:16, a claimant must "within 90 days after the completion and acceptance of the project by the contracting party" file with the proper public entity "a statement of the claim." RSA 447:17. A copy of the statement of claim is then "sent by mail by the office where it is filed to the principal and surety." *Id.* We have held that the failure to comply with the statutory requirement that a statement of claim be filed with the designated party "is usually held fatal." *American Fidelity Co. v. Cray*, 105 N.H. 132, 136 (1963); *see Fastrack Crushing Servs. v. Abatement Int'l/Advatex Assocs.*, 149 N.H. 661, 666 (2003) (*Fastrack I*). We have also held that giving notice within the ninety-day period required by RSA 447:17 is a condition precedent to any claim against a statutory bond. *See Fastrack Crushing Servs. v. Abatement Int'l/Advatex Assocs.*, 153 N.H. 284, 287 (2006) (*Fastrack II*).

■ "[T]he main purpose of [this] notice requirement is to provide parties with an opportunity to settle the claim without resorting to litigation."

*Mountain Envtl. v. Abatement Int'l/Advatex Assocs.*, 149 N.H. 671, 674 (2003). Another purpose is to allow the prime contractor to pay his subcontractors "without fear of additional liability to sub-subcontractors or materialmen." *Fastrack II*, 153 N.H. at 287 (quotation omitted). The notice required by RSA 447:17 "thus prevents both double payments by prime contractors and the alternative of interminable delay in settlements between contractors and subcontractors." *Id.* (quotation omitted).

In the event that there is no settlement, a claimant may sue on a statutory bond provided that the claimant, "within one year after filing [the notice of claim]," files a petition in superior court to enforce the claim "with copy to the principal and surety, and such further notice as the court may order." RSA 447:18. The court then "shall examine all claims having been duly filed" and hold a hearing, "with notice to all creditors who have filed claims as herein provided, and to the principal and surety or sureties, and find the respective amounts due such party claimants." *Id.* The court may require "the attendance of any official with whom claims have been filed, with such claims, or require such official to furnish a copy of such claims" for the court's use. *Id.* As with the failure to comply with RSA 447:17, we have held that the failure to comply with RSA 447:18 is "usually held fatal." *Cray*, 105 N.H. at 136.

In addition to the remedy of seeking payment on the bond, RSA 447:15 (2002) allows for a mechanic's lien to attach "to any money due or to become due from the state or from any political subdivision thereof by virtue of any contract for any public work or construct, alteration, or repair, in the performance of which contract the lienor participated by performing labor or furnishing materials or supplies." The purpose of this lien provision "is to put those who supply materials [and labor] for the erection of state property on a parity, in respect to their liens, with those who perform a like service for private owners." *American Bridge Co. v. Company*, 87 N.H. 62, 63 (1934); *see Lyle Signs, Inc. v. Evroks Corp.*, 132 N.H. 156, 158 (1989).

### 3. Interpretation of RSA 447:18

RSA 447:18 provides, in pertinent part: "Said claimant shall, within one year after filing such claim, file a petition in the superior court . . . to enforce his claim or intervene in a petition already filed, with copy to the principal and surety, and such further notice as the court may order." "Pursuant to general rules of statutory construction, the word 'shall' is a command, which requires mandatory enforcement." *Fastrack I*, 149 N.H. at 664-65 (quotation omitted). Substantial compliance with this statute does

not suffice. *See id.* at 666. "Our law is well settled that in giving statutory notice the requirements of the statute must be strictly observed." *Id.* (quotation omitted).

The petitioner concedes that it did not provide copies of its petitions to the moving respondents until August 2008, more than one year after filing its March 2007 claim. The petitioner argues that, nonetheless, it complied with RSA 447:18 because "[t]he one year statute of limitations contained in RSA 447:18 qualifies and relates only to the date of the filing for the Petition to Enforce" and "does not create a specific obligation to provide a Respondent a copy of such Petition within a specific timeframe (i.e., one year)."

"Although the legislature is not compelled to follow technical rules of grammar and composition, a widely accepted method of statutory construction is to read and examine the text of the statute and draw inferences concerning its meaning from its composition and structure." *In re Richard M.*, 127 N.H. 12, 17 (1985) (quotation omitted). Here, we must determine to what subject the phrase "within one year after filing such claim" applies.

"Where a sentence contains several antecedents and several consequents they are to be read distributively. The words are to be applied to the subjects that seem most properly related by context and applicability." 2A N. SINGER & J.D. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47.26, at 438 (7th ed. 2007). Thus, "[w]here several words granting power, authority, and obligation are found at the beginning of a clause, it is not necessary that each of the words apply to the several branches of the clause. It may be construed reddendo singula singulis and the words giving power and authority limited to particular subjects and those of obligation applied to others." *Id.* at 441.

In this case, the subjects most properly related to the phrase "within one year after filing such claim" are "file a petition" and "with copy to principal and surety." It would not make sense to apply the phrase to "such further notice as the court may order" because a petitioner has no control over when a court will issue orders for further notice. As the petitioner contends: "[I]t is impossible for a party filing a Petition to predict when a particular Court might be able to receive, process, and return an Order of Notice for service on a Respondent." We will not interpret a statute to require such an illogical result. *State v. Yates*, 152 N.H. 245, 255 (2005); *see General Electric Co. v. Dole*, 105 N.H. 477, 479 (1964).

Further aiding our construction is the fact that the phrase "with copy to principal and surety" is separated from the phrase "file a petition" with a comma and that there is a conjunction separating "such further

notice as ordered by the court" from the rest of the sentence. This indicates that the two phrases "file a petition" and "with copy to principal and surety" are to be read together, while the phrase "such further notice as ordered by the court" is to be read on its own.

The petitioner argues that it is "absurd" to require a petitioner to provide a respondent with "two (2) copies of the exact same pleading." We disagree. New Hampshire is not alone in requiring a petitioner to provide separate notice of the filing of a lawsuit under similar circumstances. *See* N.M. Stat. Ann. § 48-2A-9 (Michie 1995) (requiring that written notice of lawsuit to obtain satisfaction of stop notice be mailed to subject of lawsuit within five days after date suit was filed).

 Moreover, construing the statute to require a petitioner to provide the principal and surety with a copy of the petition to enforce the bond in addition to "such further notice as the court may order" is consistent with the last antecedent rule. *See Mountain Valley Mall Assocs. v. Municipality of Conway*, 144 N.H. 642, 652 (2000). The last antecedent rule, a subset of reddendo singula singulis, "is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Id.* (quotation omitted); *see* L. JELLUM, MASTERING STATUTORY INTERPRETATION 84 (2008); SINGER & SINGER, *supra* § 47.33, at 487-89. This rule has been adopted by statute. *See* RSA 21:14 (2000); *Piper v. Railroad*, 75 N.H. 435, 442 (1910). RSA 21:14 provides: "The words 'said' and 'such,' when used by way of reference to any person or thing, shall apply to the same person or thing last mentioned." *See Piper*, 75 N.H. at 442. Applying this rule, "such further notice" means that the copy of the petition given to principal and surety when the petition is filed is in addition to any court-ordered notice. The copy of the petition given when the petition is first filed is the first notice and court-ordered notice given thereafter is "such further notice." In other words, the statute requires that the petitioner provide the respondents with two copies of the same pleading, once when the petitioner first files the petition and again when the petitioner is ordered to serve the respondents by the trial court.

 In this case, because the petitioner did not provide the moving respondents with a copy of its petitions within one year after filing its notice of claim, the petitioner did not strictly comply with RSA 447:18, and the trial court did not err by dismissing its petitions. *See Fastrack I*, 149 N.H. at 666.

## B. *Unjust Enrichment/Restitution and Quantum Meruit Claims*

The petitioner next asserts that the trial court erred by dismissing its alternative claims for unjust enrichment/restitution and quantum meruit. The petitioner contends that, contrary to the trial court's decision, its petitions alleged sufficient facts to establish these claims against the moving respondents.

"In reviewing a motion to dismiss, our standard of review is whether the allegations in the petitioner['s] pleadings are reasonably susceptible of a construction that would permit recovery." *McNamara v. Hersh*, 157 N.H. 72, 73 (2008) (quotation and brackets omitted). We assume the petitioner's pleadings to be true and construe all reasonable inferences in the light most favorable to it. *Id.* We need not assume the truth of statements in the petitioner's pleadings, however, that are merely conclusions of law. *In the Matter of Kenick & Bailey*, 156 N.H. 356, 358 (2007). We then engage in a threshold inquiry that tests the facts in the petition against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. *McNamara*, 157 N.H. at 73.

The petitioner's petitions failed to allege facts sufficient to state either a claim for restitution or for quantum meruit recovery against the moving respondents. Restitution and quantum meruit recovery based upon "unjust enrichment are allowed by the courts as alternative remedies to an action for damages for breach of contract." 26 R. LORD, WILLISTON ON CONTRACTS § 68:1, at 5 (4th ed. 2003); *see Kondrat v. Freedom School Board*, 138 N.H. 683, 686 (1994). We first address the petitioner's restitution claim.

"A plaintiff is entitled to restitution for unjust enrichment if the defendant received a benefit and it would be unconscionable for the defendant to retain that benefit." *Nat'l Employment Serv. Corp. v. Olsten Staffing Serv.*, 145 N.H. 158, 163 (2000). "The party seeking restitution must establish not only unjust enrichment, but that the person sought to be charged had wrongfully secured a benefit or passively received one which it would be unconscionable to retain, and unjust enrichment generally does not form an independent basis for a cause of action." 42 C.J.S. *Implied Contracts* § 10, at 17 (2007); *see Kowalski v. Cedars of Portsmouth Condo. Assoc.*, 146 N.H. 130, 133 (2001).

The petitioner's petitions alleged only that the respondents "received a substantial benefit without compensating Petitioner for same," which it would be "unconscionable" for them to retain. These are legal conclusions, however, which we are not obliged to accept as true. *See In the*

*Matter of Kenick & Bailey*, 156 N.H. at 358. The petitions alleged no predicate facts to support these legal conclusions, and, therefore, failed to state a claim for restitution. *See Cray*, 105 N.H. at 137 (concluding, even assuming that surety received benefit from materials furnished by respondent, "this is not sufficient in itself to impose a duty of restitution").

■ We next turn to the petitioner's claim for quantum meruit recovery. While "[d]amages in unjust enrichment are measured by the value of what was inequitably retained[,] [i]n *quantum meruit*, by contrast, the damages . . . are based on the value of the services provided by the plaintiff." *Paffhausen v. Balano*, 708 A.2d 269, 271 (Me. 1998) (citation omitted). "A valid claim in quantum meruit requires [that]: . . . (1) services were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Id.* (quotation omitted). The petitioner's petitions did not allege any of these requisite facts, and, thus, failed to state a claim for quantum meruit recovery against the moving respondents.

For all of the above reasons, therefore, we affirm the trial court's dismissal of the petitioner's petitions against the moving respondents.

*Affirmed and remanded.*

HORTON, J., retired, specially assigned under RSA 490:3, concurred; BROCK, C.J., retired, specially assigned under RSA 490:3, dissented.

BROCK, C.J., retired, specially assigned under RSA 490:3, dissenting. This case involves a petition to enforce a bond filed by the petitioner, General Insulation Company (General Insulation), for materials it supplied on the bonded project known as "Bedford Middle/High School" in Bedford. Despite General Insulation having timely filed its notice of claim pursuant to RSA 447:17 (Supp. 2009) and its petition to enforce pursuant to RSA 447:18 (2002), the trial court still dismissed the petition as untimely merely because the principals and sureties on the project did not receive copies of the petition until General Insulation, complying with the court's order of notice, served copies on them. *See* SUPER. CT. R. 124. The trial court ruled that, even though General Insulation's petition was filed within one year of its notice of claim, the fact that the principals and sureties did not obtain their copies of the petition until sometime later was fatal to General Insulation's petition. The plurality, elevating form over substance, affirms. I cannot join such a decision.

The filing of a claim to enforce a bond involves two steps. First, a statement of claim is filed "within 90 days after the completion and acceptance of the project by the contracting party." RSA 447:17. The public

entity with which the claim is filed is then responsible for sending a copy of the statement of claim to the principal and surety. *Id.* "[T]he main purpose of [this] notice requirement is to provide parties with an opportunity to settle the claim without resorting to litigation." *Mountain Envtl. v. Abatement Int'l/Advatex Assocs.*, 149 N.H. 671, 674 (2003).

The second step, governed by RSA 447:18, is to file the petition to enforce the claim. To be timely, the petition must be filed "within one year after filing [the notice of claim]." RSA 447:18. As part of this process, the claimant must provide a copy of the petition to the principal and surety "*and* such further notice as the court may order." *Id.* (emphasis added).

In this case, it is undisputed that General Insulation timely filed both its notice of claim *and* its petition to enforce its claim. General Insulation filed its notice of claim on March 15, 2007, and its petition on March 6, 2008, well within one year of its notice of claim. Pursuant to Superior Court Rule 124 and RSA 447:18, the trial court issued its orders of notice on August 1, 2008, which were returnable on September 2, 2008. General Insulation diligently complied with the court's orders and served the principals and sureties on the project on August 6 and August 8, respectively.

Nonetheless, the trial court ruled, and the plurality agrees, that General Insulation's petition was untimely because the principals and sureties received copies of it in August 2008 instead of before March 15, 2008 (within one year of General Insulation's notice of claim). This result is not only unfair, but is contrary to the plain language of RSA 447:18.

RSA 447:18 provides, in pertinent part: "Said claimant shall, within one year after filing such claim, file a petition in the superior court ... to enforce his claim or intervene in a petition already filed, with copy to the principal and surety, and such further notice as the court may order." The meaning of this statute is plain. The phrase "within one year after filing such claim" is set off by commas, and, thus, modifies only the phrase "file a petition." Accordingly, as long as the petition is filed within this one-year period, it is timely under RSA 447:18.

The next phrases in RSA 447:18 must be read together. They require the claimant to provide a copy of the petition to the principal and surety "and such further notice as the court may order." The use of the words "and such further" makes clear that the claimant need not provide a copy of the petition to the principal and surety until the court issues its orders of notice as required by Superior Court Rule 124. The copy of the petition provided to the principal and surety is the first "notice" that the "court may order." The claimant, however, is also required to provide "such *further* notice as the court may order." (Emphasis added.)

Nothing in RSA 447:18 requires that the claimant's compliance with the court's orders of notice occur within one year after the claimant's notice of

claim has been filed. The clear intent of this statutory provision is to set the date by which a claimant must file a petition, not the date by which copies of the petition must be given to the principal and surety.

Justices Duggan and Horton, using an analytical process grounded in linguistic sophistry and shrouded in Latin to divine legislative intent, conclude that "the statute requires that the petitioner provide the respondents with two copies of the same pleading, once when the petitioner first files the petition and again when the petitioner is ordered ·to serve the respondents by the trial court." Unfazed by the lack of logic in its conclusion, the plurality argues that "New Hampshire is not alone in requiring a petitioner to provide separate notice of the filing of a lawsuit under *similar* circumstances." (Emphasis added.) In support of this statement, the plurality cites a New Mexico statute, which it describes as "requiring that written notice of lawsuit to obtain satisfaction of stop notice be mailed to subject of lawsuit within five days after date suit was filed." The New Mexico statute relied upon, however, involves the issuance of "stop notices," which require a construction lender or owner to withhold construction funds equal to the amount of the claim stated in the stop notice. *See* N.M. Stat. Ann. § 48-2A-8(A) (Michie 1998). Because the stop notice limits the ability of the lender or owner to disburse construction funds to the contractor until the claim is satisfied or adjudicated by a court of competent jurisdiction, the statute requires both that a lawsuit be filed between thirty and sixty days after the stop notice is delivered and that notice of the lawsuit be mailed within five days after the suit is filed. *See* N.M. Stat. Ann. § 48-2A-9(A). The purpose of requiring notice within five days is obvious — it is important that the lender or owner know quickly whether a lawsuit has been filed since funds that could otherwise be disbursed are tied up by the stop notice, and the period for filing a lawsuit expires after sixty days. This sharply contrasts with the instant case, which simply involves a suit upon a bond that can be filed up to a year and ninety days after the completion and acceptance of the project. By no means are these situations remotely "similar."

In construing RSA 447:18, the plurality relies, in part, upon our rule that substantial compliance with the statutory notice requirements of RSA chapter 447 does not suffice; strict compliance is required. *See Fastrack Crushing Servs. v. Abatement Int'l/Advatex Assocs.*, 149 N.H. 661, 666 (2003). This reliance is misplaced. This rule is of no assistance in construing exactly what RSA 447:18 requires. Nothing in this rule compels the court to adopt a construction of the statute that is unjust and unfair.

Rather than slavishly following arcane canons of statutory construction, we should look to what the legislature intended. *See Chagnon v. Union-Leader Co.*, 104 N.H. 472, 474 (1963) (legislative intent, not arbitrary

canons of statutory construction, is controlling), *superseded on other grounds by statute as stated in Hanchett v. Brezner Tanning Co.*, 107 N.H. 236 (1966). Because, as the petitioner rightly observes, no purpose of the statute would be advanced by construing the statute, as the plurality does, as requiring the petitioner to provide the respondents with two copies of the exact same pleading, we should reject that construction. This is particularly apt here, where a common sense reading of the statute, as set forth above, avoids absurdity and is consistent with the legislature's obvious intent. Moreover, the result reached by the plurality is draconian given the petitioner's and its attorney's reasonable interpretation and reliance upon the statutory language at issue.

Here, because the petitioner timely filed its petitions and provided the respondents with copies of them after the court issued orders of notice, the petitioner fully complied with RSA 447:18. I would hold, therefore, that the trial court erred when it dismissed the petitioner's petitions to enforce the bonds at issue. Accordingly, I respectfully dissent.