Coos
Nos. 2010-259
 2010-356

# J & M Lumber and Construction Company, Inc.

### v.

# J. Robert Smyjunas, Jr. & a.

Argued: February 16, 2011
Opinion Issued: April 14, 2011

*The Crisp Law Firm, PLLC*, of Concord, (*Jack P. Crisp, Jr.* on the brief and orally), and *Wiggin & Nourie, P.A.*, of Manchester (*Andrea Q. Labonte* on the brief), for the plaintiff.

*Cleveland, Waters and Bass, P.A.*, of Concord (*William B. Pribis* on the brief and orally), for the defendant.

DALIANIS, C.J. In these consolidated cases, the defendant, J. Robert Smyjunas, Jr., appeals the jury verdict against him in favor of the plaintiff, J & M Lumber and Construction Company, Inc. (J & M), and J & M appeals the decision of the Superior Court (*Vaughan*, J.) to award prejudgment interest from the date of J & M's 2008 writ of summons. We affirm.

*I. Background*

The record reveals the following facts. In 2000, J & M brought an equity action against Gorham Supermarket, LLC (Gorham Supermarket), among others, to enforce J & M's easement rights associated with land in Gorham. In a 2003 order, the superior court, in addition to other rulings, ordered Gorham Supermarket to pay J & M's attorney's fees and costs. Gorham Supermarket appealed, and in a 2004 order, we upheld the trial court's decision. *See J and M Lumber and Construction Company, Inc. v. Gorham Supermarket LLC & a.*, No. 2003-0644 (N.H. Aug. 4, 2004). In 2005, the trial court calculated the total amount of attorney's fees and costs owed J & M to be $110,007.01.

In 2008, J & M brought the instant action against Smyjunas, Gorham Supermarket, Bitsy Realty, Inc. (Bitsy Realty) and Tolle Road Partners,

Inc. (Tolle Road), seeking to collect the 2005 attorney's fees and costs award. J & M's writ alleged that Gorham Supermarket had not paid any of J & M's attorney's fees and costs, despite the court order to do so, and that, in fact, Gorham Supermarket had been improperly dissolved and its assets depleted to avoid liability. The writ alleged that Bitsy Realty and Tolle Road were the sole members of Gorham Supermarket, which is a limited liability company, and that Smyjunas was the sole owner of both Bitsy Realty and Tolle Road. It also alleged that Smyjunas, Bitsy Realty and/or Tolle Road improperly liquidated and received Gorham Supermarket's assets, leaving Gorham Supermarket without sufficient assets to pay its debt to J & M.

The case was tried to a jury. Before the trial concluded, J & M voluntarily dismissed with prejudice its claims against Gorham Supermarket, Bitsy Realty and Tolle Road. As a result, Smyjunas became the only defendant.

J & M's claims against Smyjunas were: (1) piercing the corporate veil; (2) improper wind up of a limited liability company; (3) unjust enrichment; and (4) breach of the implied duty of good faith and fair dealing. The jury issued a general verdict in J & M's favor, awarding J & M $110,007.01. Thereafter, J & M filed a motion for prejudgment interest dating either from its 2000 equity action or the trial court's 2005 orders requiring Gorham Supermarket to pay J & M $110,007.01 in attorney's fees and costs. The trial court awarded J & M prejudgment interest running only from the date of its 2008 writ. These appeals followed.

## II. Smyjunas's Appeal

### A. Timeliness of Claims

Smyjunas first argues that the trial court erred by failing to dismiss J & M's claims for improper dissolution and unjust enrichment because, he argues, both claims are time-barred. Under RSA 508:4, I (2010):

> [A]ll personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

Smyjunas contends that J &M's improper dissolution claim is untimely because when J & M deposed him in January 2002, it knew or should have

known that he had improperly dissolved Gorham Supermarket. He argues that J & M's unjust enrichment claim similarly is untimely because, as of his January 2002 deposition, J & M knew or should have known that he had allegedly received Gorham Supermarket's assets unjustly. Thus, he reasons, J & M should have filed its suit within three years of January 2002 to be timely.

■■ These arguments presume that J & M would have had standing to assert its improper dissolution and unjust enrichment claims in January 2002, three years before the trial court had even calculated the amount of attorney's fees and costs that Gorham Supermarket owed J & M. For a party to have standing, the party must have suffered a legal injury. *Libertarian Party of N.H. v. Sec'y of State*, 158 N.H. 194, 195 (2008). J & M did not suffer an injury from the allegedly improper dissolution of Gorham Supermarket or Smyjunas's alleged unjust enrichment in 2002.

■ Smyjunas's reliance upon the "discovery rule" to support his arguments is to no avail. The discovery rule allows a plaintiff to commence an action within three years "of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of." RSA 508:4, I. The rule has two prongs that must be satisfied: "First, a plaintiff must know or reasonably should have known that it has been injured; and second, a plaintiff must know or reasonably should have known that its injury was proximately caused by conduct of the defendant." *Beane v. Dana S. Beane & Co.*, 160 N.H. 708, 713 (2010) (quotation omitted). Here, there was *no* injury for J & M to discover in 2002.

Smyjunas next asserts that J & M's unjust enrichment claim is barred by laches because J & M "sat on its rights for more than six years" after his 2002 deposition "before filing suit" on this claim. He has failed to provide a record, however, demonstrating that he preserved this claim for our review by arguing laches in the trial court. Accordingly, we decline to address it. *See Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004).

### B. Collateral Estoppel

Smyjunas next argues that the trial court erred when it granted J & M's motion *in limine* to preclude him from relitigating whether he had notice of J & M's claim regarding its easement when Gorham Supermarket owned the subject property (1997-1998) and before Gorham Supermarket was dissolved in 2001. The trial court ruled that Smyjunas was collaterally estopped from relitigating this fact because it had been fully litigated and decided in J & M's original suit against Gorham Supermarket. Smyjunas also argues that the trial court erred when it instructed the jury that, "The

Court has already found and ruled that [Smyjunas] had notice of [J & M's] easement over the property that was developed."

We assume, without deciding, that the trial court erred when it granted J & M's motion *in limine* and gave the contested jury instruction. We apply a two-step analysis to determine whether to reverse a jury verdict in a civil case based upon an erroneous jury instruction. *Rallis v. Demoulas Super Markets*, 159 N.H. 95, 98 (2009). First, the appealing party must show that it was a substantial error such that it could have misled the jury regarding the applicable law. *Id.* at 98-99. Second, if we conclude that the error was a substantial one, we will reverse the jury verdict unless the opposing party shows that the error did not affect the outcome at trial; in other words, the error was harmless. *Id.* at 99. Here, we do not reverse because we conclude that the alleged error was harmless.

Notwithstanding the trial court's collateral estoppel ruling, Smyjunas did not dispute that he knew of J & M's easement before construction began. He testified:

Q. Now, you will notice in the deed to you —

A. Uh-huh.

Q. — by which you bought the property, there is reference to the right of way, isn't there?

A. Oh, yes. Yes, there is.

Q. And all of your engineering diagrams showed that right of way, did they not?

A. Oh, yes.

. . . .

Q. And during the course of that investigation [of the status of the property], you must have learned about this J & M Lumber easement?

A. We — yes, we learned about that. We had — we learned about it in the title review. We learned about it in the deeds that we looked at in the very beginning. We looked — so it was — it was — it was fairly well known.

Additionally, J & M's owner, Marcel Nadeau, testified that he called Smyjunas "twice to make him aware that [Nadeau] had a right of way going through that land." He testified:

Q. You said that in 1997 you called Mr. Smyjunas twice —

A. Yes.

Q. — to tell him about the easement.

A. Yes, I did.

Q. And did you actually speak with him?

A. I talked to him personally.

Q. And what did you tell him?

A. I told him that I had a right of way, you know, going through that land that he had — that he had purchased . . . ; that I wanted to protect my right of way because I was going to make use of it.

Q. And when was the next time you spoke with Mr. Smyjunas?

A. I spoke to him after he had started his site work.

. . . .

Q. And what did you tell him then?

A. I told him that they started the thing, and I said, "Don't forget, it's a deeded right of way, it's a right of way of record," and I says [*sic*], "I want to preserve it."

■ On this record, we conclude that a reasonable juror could not have found anything other than that Smyjunas had notice of J & M's easement over the property. Accordingly, we hold that the trial court's instruction to that effect did not affect the outcome at trial.

### C. 1998 Account Transcript

Smyjunas next contends that the trial court erred when it allowed J & M, over his objection, to admit evidence of his 1998 account transcript from the Internal Revenue Service. This account transcript showed that for the year 1998, the joint gross income for Smyjunas and his wife was $2,018,515. Smyjunas's 1999 account transcript, which was also admitted into evidence, showed that in 1999, he and his wife had gross income of $362,611.

Smyjunas asserts that it was error to admit evidence of his 1998 account transcript because it "had no probative value whatsoever" and caused him

"substantial prejudice." He argues that "[i]t is entirely probabl[e] that a juror could have improperly factored in the seemingly very high income earned by . . . Smyjunas and his wife in 1998 to determine that he was able, and therefore should, pay [J & M's] judgment individually."

The admissibility of evidence is generally within the discretion of the trial court, and we will uphold its rulings unless the exercise of its discretion is unsustainable. *N.H. Ball Bearings v. Jackson*, 158 N.H. 421, 431 (2009). To be admissible, evidence must be relevant. *Id.* Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.H. R. Ev. 403. "A trial judge is granted broad discretion when balancing the probative value of evidence against the possible prejudice resulting from its admission." *McLaughlin v. Fisher Eng'g*, 150 N.H. 195, 199 (2003) (quotation and brackets omitted). Accordingly, we will uphold the trial court's decision to admit the 1998 account transcript unless Smyjunas demonstrates that this decision was clearly untenable or unreasonable to the prejudice of his case. *See id.*

We hold that the trial court sustainably exercised its discretion when it allowed J & M to admit evidence of Smyjunas's 1998 account transcript. The trial court reasonably found that this evidence had a "tendency" to prove a fact that was "of consequence." N.H. R. Ev. 401. Specifically, Smyjunas's 1998 account transcript had a tendency to show that Gorham Supermarket substantially depleted its assets soon after J & M notified Smyjunas in 1997 about its easement claim. This fact, if proved, was, in turn, central to J & M's piercing the corporate veil claim.

The trial court also reasonably determined that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice from its admission. "Evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case." *Zola v. Kelley*, 149 N.H. 648, 655 (2003) (quotation omitted).

Here, contrary to Smyjunas's suggestion, the primary purpose for admitting the evidence or the effect of its admission was not to provoke the jury's instinct to punish, but rather to establish one of the central issues of the case — that he depleted the assets of the corporate entities despite

having notice of J & M's claim. In this context, evidence of Smyjunas's finances during the years in question was highly probative. While admission of the 1998 account transcript arguably was prejudicial, we conclude that the danger of unfair prejudice did not substantially outweigh its probative value. Therefore, the trial court did not err by admitting Smyjunas's 1998 account transcript into evidence.

## D. Expert Witness Disclosure

Smyjunas next argues that the trial court erred when it partially denied his motion *in limine* to exclude J & M's expert's testimony. On December 31, 2008, J & M disclosed Richard J. Brauel, Jr., CPA, as an expert witness, stating that he had been asked to review the financial condition of Gorham Supermarket and the other corporate entities, including, but not limited to, the assets these entities owned before they were dissolved and the distribution of same. On March 17, 2010, J & M supplemented this disclosure, explaining that its expert would also testify "regarding the process of, generally accepted practices associated with[,] and the requirements in New Hampshire for winding up New Hampshire limited liability companies . . . and [would give his opinion that Smyjunas] did not follow the usual process, generally accepted practices and the related requirements." The supplemental disclosure further informed Smyjunas that the expert was "expected to testify [that Smyjunas] failed to account and provide for [J & M's] claim."

On March 18, 2010, Smyjunas filed a motion *in limine* to exclude the expert's testimony with respect to both disclosures. Smyjunas argued that the first disclosure failed to provide specifics and "did not remotely comply with the provisions of RSA 516:29-b." He contended that the second disclosure "appear[ed] to exceed [the] scope of opinions 'disclosed' in the first disclosure," and that it was untimely. He also argued that because he had no "meaningful opportunity to respond to the . . . second . . . expert disclosure," allowing the expert to give the opinions disclosed therein "would be extremely unfair" and cause him "substantial prejudice."

The trial court granted Smyjunas's motion as it pertained to the second disclosure, but denied it as it pertained to J & M's initial disclosure. Smyjunas argues that this was error. He asserts that because the first disclosure did not comply with RSA 516:29-b (2007), the trial court should have precluded the expert's testimony altogether.

■ RSA 516:29-b, II requires parties in civil cases to disclose to their opponents any expert witness and, unless the parties so stipulate or the court orders otherwise, to provide for each such witness a written report that includes certain specific information. *In re Nicholas L.*, 158 N.H. 700,

702 (2009). Because the parties do not argue otherwise, we will assume that the trial court did not vary the requirements set forth in RSA 516:29-b, II. *Milliken v. Dartmouth-Hitchcock Clinic*, 154 N.H. 662, 670 (2006); *see* RSA 516:29-b, II.

Additionally, RSA 516:29-b does not provide for any particular sanction for a party's failure to comply with its mandates. In his brief, Smyjunas appears to assume that our case law regarding the discovery obligations of civil litigants under superior court rules applies to RSA 516:29-b. *See* SUPER. CT. R. 35(f). We make the same assumption for the purposes of this appeal.

Under our case law interpreting superior court rules, "[a] party is entitled to disclosure of an opposing party's experts, the substance of the facts and opinions about which they are expected to testify, and the basis of those opinions." *Laramie v. Stone*, 160 N.H. 419, 425 (2010) (quotation and ellipsis omitted). "A party's failure to supply this information should result in the exclusion of expert opinion testimony unless good cause is shown to excuse the failure to disclose." *Id.* (quotation omitted); *see* SUPER. CT. R. Preface. The trial court has broad discretion in the management of discovery, and its decisions will be reviewed under an unsustainable exercise of discretion standard. *Laramie*, 160 N.H. at 425. "To show that the trial court's decision was not sustainable, the appealing party must show that the ruling was clearly untenable or unreasonable to the prejudice of his case." *Id.* (quotation omitted).

Smyjunas has failed to meet this burden. While he asserts that he "had no notice of the underlying opinions or substance of the expert testimony," the record does not support that assertion. At the hearing on his motion *in limine*, his attorney stated that, after receiving the first disclosure, Smyjunas understood that J & M's expert was going to review financial records of the corporate entities "and offer opinions related thereto." Also, at the hearing, it was revealed that Smyjunas conducted no expert witness discovery, even though J & M first disclosed its expert and the subjects about which he was expected to testify more than a year before trial. Given this record, Smyjunas has failed to demonstrate that the first disclosure's lack of specifics caused him any prejudice, and, thus, has failed to show that the trial court's decision to allow the expert to testify about the corporate financial records that he reviewed was clearly untenable or unreasonable to the prejudice of his case. *See id.*

### E. Breach of Implied Covenant Claim

Finally, Smyjunas contends that the trial court erred when it denied his motion to dismiss J & M's breach of implied covenant of good faith and fair

dealing claim. In reviewing a motion to dismiss, our standard of review is whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery. *Gen. Insulation Co. v. Eckman Constr.*, 159 N.H. 601, 611 (2010). We assume the plaintiff's pleadings to be true and construe all reasonable inferences in the light most favorable to it. *Id.* We need not assume the truth of statements in the plaintiff's pleadings, however, that are merely conclusions of law. *Id.* We then engage in a threshold inquiry that tests the facts in the writ against the applicable law. *Id.* Dismissal is warranted if the writ's allegations do not constitute a basis for legal relief. *See id.*

■ Smyjunas argues that J & M has failed to plead a claim for breach of the implied covenant or duty of good faith and fair dealing because it has not alleged that it had a contractual relationship with any of the defendants. Smyjunas contends that, without a contractual relationship between the parties, there is no cause of action for breach of the implied covenant or duty of good faith and fair dealing. We agree.

■ "[A]n obligation of good faith is imposed by statute in the performance and enforcement of every contract or duty subject to the Uniform Commercial Code." *Centronics Corp. v. Genicom Corp.*, 132 N.H. 133, 138 (1989); *see* RSA 382-A:1-201(20), :1-304 (Supp. 2010). Additionally, New Hampshire recognizes a common law "good faith contractual obligation." *Centronics Corp.*, 132 N.H. at 139. There is "not merely one rule of implied good faith duty in New Hampshire's law of contract, but a series of doctrines, each of them speaking in terms of an obligation of good faith but serving markedly different functions." *Id.*; *see Birch Broad. v. Capitol Broad. Corp.*, 161 N.H. 192, 198 (2010). The various implied good-faith obligations fall into three general categories: (1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance. *Livingston v. 18 Mile Point Drive*, 158 N.H. 619, 624 (2009).

New Hampshire law has not recognized a claim for breach of the implied covenant of good faith and fair dealing outside of the contractual context. J & M urges us to acknowledge that parties to "business dealings" generally have an obligation to deal with one another fairly and in good faith and to recognize a claim for breach of this general obligation. J & M does not contend that this claim is recognized in any other jurisdiction and cites scant legal authority to support recognizing such a claim. Under these circumstances, we decline J & M's invitation to create such a new cause of action.

J & M mistakenly asserts that we have already recognized a similar cause of action in the employment-at-will context. When employment is at

will, J & M argues, "no contract exists, but an employer nonetheless has an obligation to act in good faith and deal fairly with employees." This argument misconstrues New Hampshire law.

■ Employment at will refers to an employment *contract* that is for an indefinite period of time and is terminable at will. *See Monge v. Beebe Rubber Co.*, 114 N.H. 130, 132, 133 (1974). In *Monge*, we held "that a termination by the employer of a contract of employment at will which is motivated by bad faith or malice or based on retaliation is not in the best interest of the economic system or the public good and constitutes a breach of the employment contract." *Id.* at 133. "The rationale underlying *Monge* is that there is an implied covenant in every contractual relationship that the parties will carry out their obligations in good faith." *Cloutier v. A & P Tea Co., Inc.*, 121 N.H. 915, 920 (1981). Accordingly, the covenant of good faith to which we referred in *Monge* is a not a free-standing obligation that employers have to treat their employees fairly, but is an obligation implied into an employment contract that otherwise would be terminable at will.

■ Smyjunas argues that because the jury in this case returned a general verdict, the remedy for the trial court's failure to dismiss J & M's breach of implied covenant claim is to reverse and remand for a new trial. *See MacKenzie v. Linehan*, 158 N.H. 476, 483 (2009). The rule in New Hampshire with respect to general verdicts is that when we are in doubt as to whether the jury would have found as it did if the error had not been committed, the case should be reversed. *Id.* at 484. Although Smyjunas states this general rule, he does not demonstrate why it is doubtful that the jury would have returned the same verdict had the breach of implied covenant claim been dismissed, and we fail to see why we should entertain such doubt.

To determine whether the jury would have returned the same verdict without the implied covenant claim, we examine whether it would have been reasonably possible for this to be the *only* claim for which the jury found Smyjunas liable. If so, then we would doubt whether the jury would have returned the same verdict if the implied covenant claim had been dismissed. If, on the other hand, the jury could not reasonably have found Smyjunas liable for the implied covenant claim alone without also finding him liable for another claim, then we would not doubt whether the jury would have still returned a verdict for J & M if the implied covenant claim had been dismissed.

Based upon our review of the jury instructions, we conclude that it would not reasonably have been possible for the jury to find Smyjunas liable on the breach of implied covenant claim without also finding him liable on the unjust enrichment claim. The jury was instructed that to find for J & M on

its breach of implied covenant claim, it had to find that Smyjunas "committed a wrongful act." The jury was also instructed that the specific wrongful act of which Smyjunas was accused was of distributing the assets of Gorham Supermarket without accounting for J & M's claim and knowing that J & M had a claim.

The same wrongful act forms the basis of J & M's unjust enrichment claim. The jury was instructed that to find in J & M's favor on its unjust enrichment claim it had to find that Smyjunas "committed a wrongful act" and that the wrongful act of which he was accused was "the distribution of money when [he] should have reasonably known that J & M . . . had a claim that was likely to lead to the judgment."

Because the same wrongful act forms the basis of both claims, if the jury found in J & M's favor on its implied covenant claim, the jury would have also found in J & M's favor on its unjust enrichment claim. Moreover, the damages J & M sought were the same for *all* of its claims. The jury was instructed that "the damages [J & M] seeks are fees and costs in the amount of $110,007.01."

██ Because it is clear that if the jury found for J & M on the implied covenant claim, the jury would also have found for J & M on the unjust enrichment claim, and because J & M sought the same damages for both claims, we have no doubt that had the implied covenant claim been dismissed, the jury would have returned the same verdict. Accordingly, although we hold that the trial court erred when it failed to dismiss J & M's breach of implied covenant claim, this error does not require us to reverse and remand for a new trial.

### III. J & M's Appeal

We next address J & M's appeal, which concerns the trial court's award of prejudgment interest. After the jury verdict was returned, J & M filed a motion for statutory prejudgment interest calculated from the date on which it filed its first action (August 3, 2000) or, alternatively, for statutory post-judgment interest calculated from the dates of the trial court's 2005 orders awarding it attorney's fees and costs (August 8, 2005, and November 14, 2005). *See* RSA 524:1-a, :1-b (2007); *see also Nault v. N & L Dev. Co.*, 146 N.H. 35, 37, 39 (2001) (explaining that both pre- and post-judgment interest are available under RSA 524:1-a and RSA 524:1-b). The trial court awarded J & M prejudgment interest from the date of its 2008 writ against Smyjunas. J & M argues that the trial court erred by failing to award it prejudgment interest from 2000 or post-judgment interest from 2005.

Resolving this issue requires that we engage in statutory interpretation. We are the final arbiter of the intent of the legislature as expressed in the

words of the statute considered as a whole. *Estate of Gordon-Couture v. Brown*, 152 N.H. 265, 266 (2005). We first examine the language of the statute, and, where possible, ascribe the plain and ordinary meanings to the words used. *Id.*

We first address the interest available as a result of J & M's 2000 action and 2005 judgments. J & M argues that RSA 524:1-b governs its entitlement to interest for its 2000 action and 2005 judgments. RSA 524:1-b provides:

> In all other civil proceedings at law or in equity in which a verdict is rendered or a finding is made for pecuniary damages to any party, whether for personal injuries, for wrongful death, for consequential damages, for damage to property, business or reputation, for any other type of loss for which damages are recognized, there shall be added forthwith by the clerk of court to the amount of damages interest thereon from the date of the writ or the filing of the petition to the date of judgment even though such interest brings the amount of the judgment beyond the maximum liability imposed by law.

J & M's 2000 action was for injunctive relief for which the trial court awarded attorney's fees and costs. For the purposes of this discussion, because no party argues otherwise, we will assume without deciding that the attorney's fees and costs awarded J & M in its first action constituted "pecuniary damages . . . for . . . [a] loss for which damages are recognized," and, therefore, that RSA 524:1-b governs the statutory interest available as a result of J & M's 2000 action and 2005 judgments.

J & M asserts, in effect, that when the trial court issued its orders in 2005, interest was imposed automatically, by operation of law, from the date of J & M's 2000 writ against Gorham Supermarket until the date of payment. Smyjunas counters that in the context of J & M's case against him, the amount of the 2005 judgments, including any pre- or post-judgment interest, were elements of damages for J & M to prove. He argues, "if [J & M] believed it was legally entitled to interest on [the 2005 judgments] per RSA 524:1-a, RSA 524:1-b or the common law, it was incumbent upon J & M to submit that claim to the jury." Here, he observes, J & M did not ask the jury for more than the amount of the 2005 judgments themselves ($110,007.01). He contends that any award of statutory interest on the 2005 judgments would improperly augment J & M's damages post-trial.

We agree with Smyjunas that, in the context of this case, the amount of the 2005 judgments, including any pre- or post-judgment interest, were elements of damages for J & M to plead and prove. We further conclude

that because J & M did neither, J & M is not entitled to pre-judgment interest from the date of its 2000 writ or to post-judgment interest from the date of the court's 2005 orders.

The instant case is similar to *Carbone v. Tierney*, 151 N.H. 521, 535-36 (2004), in which we held that the interest that would have been awarded to the plaintiff had his attorney filed a successful lawsuit against his son and daughter-in-law was an element of damages to be proved. The plaintiff in *Carbone* hired the defendant to sue his son and daughter-in-law for the loss of his home and laboratory equipment. *See Carbone*, 151 N.H. at 523-24, 536. The defendant filed numerous lawsuits on the plaintiff's behalf, which were all dismissed because of the defendant's failure to comply with various court procedures. *See id.* at 524-26. Eventually, the plaintiff sued the defendant for legal malpractice, and received a jury verdict in his favor. *Id.* at 526. The trial court subsequently ordered interest to be added to the jury's verdict. *Id.* at 526-27; *see* RSA 524:1-b.

The plaintiff also asked the trial court to award interest on the judgment that he would have received had the defendant filed a successful suit against his son and daughter-in-law. *Id.* at 536. The trial court declined, ruling that the plaintiff had failed to plead or prove his entitlement to such interest as an element of his damages. *Id.* We affirmed, concluding that how much interest the plaintiff would have obtained had the defendant filed a successful suit required resolving numerous factual issues, "including when and where [the plaintiff] would have obtained [such] a judgment." *Id.* Because the plaintiff did not present any evidence to the jury, which would have allowed it to decide these factual issues, we ruled that the trial court correctly denied his motion. *Id.*

 Like the plaintiff in *Carbone*, J & M failed to plead and prove its entitlement to pre- and post-judgment interest relative to its 2000 writ against Gorham Supermarket. J & M did not present any evidence to the jury of its entitlement to interest on the 2005 judgments. The jury was instructed that J & M was awarded money in two orders, one dated August 8, 2005, and the other dated November 14, 2005, and was asked to decide the amount of damages to award J & M because of Gorham Supermarket's failure to abide by those orders. Because the jury was required to determine the amount of J & M's damages, and because J & M presented no evidence relating to interest, we conclude that the trial court in this case correctly denied J & M's request for pre-judgment interest from 2000 and for post-judgment interest from 2005.

We next address the interest available as a result of J & M's 2008 action. J & M argues that its 2008 writ was an action on a debt and that RSA 524:1-a therefore applies. RSA 524:1-a provides:

In the absence of a demand prior to the institution of suit, in any action on a debt or account stated or where liquidated damages are sought, interest shall commence to run from the time of the institution of suit. This statute shall be inapplicable where the party to be charged pays the money into court in accordance with the rules of the superior court.

For the purposes of this discussion, we will assume that J & M's 2008 writ was an "action on a debt or account stated or where liquidated damages [were] sought." RSA 524:1-a.

J & M asserts that because it "made a demand for payment of the 2005 Orders (the debt) shortly after the 2005 Orders were made," it is entitled to interest under RSA 524:1-a from the date of its 2005 demand. Under RSA 524:1-a, if a demand has been made before suit, interest accrues from the time of the demand; if no demand has been made, it accrues "from the time of the institution of suit." *In re Estate of Ward*, 129 N.H. 4, 12 (1986). Here, although J & M asserts in its brief that it made a demand for payment shortly after the trial court's 2005 orders, nothing in the record on appeal demonstrates that such a demand was made. Accordingly, we cannot disturb the trial court's implied finding that J & M did not make a demand before instituting suit, and, therefore, that interest was available only from the date on which J & M initiated the current lawsuit, and not from the date of its alleged 2005 demand.

For all of the above reasons, therefore, we affirm the trial court's decision to award J & M prejudgment interest from the date of its 2008 writ against Smyjunas. We have reviewed J & M's remaining arguments and hold that they lack merit and warrant no extended consideration. *Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

DUGGAN, HICKS and LYNN, JJ., concurred.