Merrimack
No. 2012-217

PAUL SANGUEDOLCE

v.

ANDREW WOLFE & a.

Argued: November 8, 2012
Opinion Issued: February 25, 2013

*Nixon, Vogelman, Barry, Slawsky & Simoneau, P.A.*, of Manchester (*Lawrence A. Vogelman* on the brief, and *Kirk C. Simoneau* orally), for the plaintiff.

*Gagliuso & Gagliuso Professional Association*, of Merrimack (*Richard C. Gagliuso* on the brief and orally), for the defendant.

HICKS, J. The plaintiff, Paul Sanguedolce, appeals a decision of the Superior Court (*McNamara*, J.) granting the motion to dismiss of the defendant, Telegraph Publishing Company (Telegraph). Named defendant Andrew Wolfe is not a party to this appeal. We affirm in part, vacate in part, and remand.

I

In September 2011, the plaintiff, an inmate in the state prison, filed a defamation action against the Telegraph, which is a newspaper, and Wolfe, a Telegraph reporter. The writ alleged that, on April 21, 2011, the Telegraph published a newspaper article written by Wolfe stating that the plaintiff, an accomplice of Peter Gibbs in a robbery and home invasion, "testified against" Gibbs in Gibbs's criminal trial for those crimes. In fact, the plaintiff did not testify against Gibbs. The Telegraph moved to dismiss, arguing that the complained-of statement "is not considered defamatory as a matter of law." The plaintiff moved to amend the writ to include a separate cause of action for negligence. The trial court granted the motion to dismiss and denied the motion to amend. The plaintiff appeals.

II

In reviewing a motion to dismiss, our standard of review is whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery. *Gen. Insulation Co. v. Eckman Constr.*, 159 N.H. 601, 611 (2010). We assume the plaintiff's pleadings to be true and construe all reasonable inferences in the light most favorable to him. Id. We need not assume the truth of statements in the plaintiff's pleadings, however, that are merely conclusions of law. *Id.* We then engage in a threshold inquiry that tests the facts in the writ against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. *Id.*

To survive the motion to dismiss, the plaintiff must have alleged facts that would show "that the defendant failed to exercise reasonable care

in publishing a false and defamatory statement of fact about the plaintiff to a third party, assuming no valid privilege applies to the communication." *Pierson v. Hubbard*, 147 N.H. 760, 763 (2002). To be defamatory, the complained-of "language must tend to lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a small minority." *Touma v. St. Mary's Bank*, 142 N.H. 762, 765 (1998). Thus, for the purpose of deciding this appeal, we must determine whether the statement may reasonably be construed as having reduced the plaintiff in the esteem of a substantial and respectable group. We have had no occasion to decide whether a published statement falsely reporting that a prisoner testified against a criminal associate may constitute defamation.

■ The plaintiff argues that "Telegraph readers could find that the [plaintiff], by [allegedly] testifying against Gibbs, had acted as a 'rat,' 'tattletale,' 'snitch,' or had, perhaps, committed perjury or 'cut a deal' in exchange for leniency." At the outset, we note that the plaintiff's writ does not allege that the Telegraph published a statement that the plaintiff testified *falsely* for the purpose of obtaining leniency in his criminal case; it alleges only that he "testified against Gibbs." Thus, while a false accusation of perjury may constitute defamation, *see* 50 AM. JUR. 2D *Libel and Slander* § 180, at 523 (2006), the statement that the plaintiff testified against Gibbs cannot reasonably be read to imply that the plaintiff committed perjury.

As support for his position that a jury could find the article's false statement defamatory, the plaintiff cites in his brief a number of sources purporting to demonstrate the generally low esteem in which even respectable groups in our society hold informants. He contends, for example, that society often associates informants with disloyalty, betrayal, and self-interest, and relies on a body of commentary highlighting that informants are often derided and loathed by society for those attributes. *See, e.g.,* Asbury, *Anti-Snitching Norms and Community Loyalty*, 89 OR. L. REV. 1257, 1300 (2011) ("[S]nitching — a violation of personal loyalty — is generally disfavored. . . . [N]obody likes a snitch. . . ."). Because these negative associations may reflect the views of "some respectable segment of the community," according to the plaintiff, he should have "the opportunity to make his case to a jury."

■■ Our review of the legal precedents addressing this issue reveals widespread rejection of the proposition that a false statement that a person cooperated with authorities in bringing another person to justice may constitute defamation. *See, e.g., Agnant v. Shakur*, 30 F. Supp. 2d 420, 422, 424 (S.D.N.Y. 1998) (rejecting defamation claim based upon lyric referring to plaintiff as "a snitch named Haitian Jack"; "those who would think ill of

one who legitimately cooperates with law enforcement officials" are not "right-thinking persons"); *Waring v. William Morrow & Co., Inc.*, 821 F. Supp. 1188, 1189 (S.D. Tex. 1993) (observing that attempt to report information of planned homicide is "highly laudatory"); *see also Clawson v. St. Louis Post-Dispatch*, 906 A.2d 308, 316 (D.C. 2006) (collecting cases); *cf. Andrews v. Stallings*, 892 P.2d 611, 624 (N.M. Ct. App. 1995) ("[W]e have not reached the point where a lawful attempt to assist law enforcement agents is considered odious."). We readily adopt the rule and rationale of these decisions. It may be that some elements in our society would look unkindly upon those who willingly cooperate with the authorities in apprehending or convicting a criminal. Prisoners, in particular, may harbor these sentiments. The prevailing view among law-abiding citizens, however, is that such conduct reflects good moral character, respect for the rule of law, and a willingness to place the interests of truth, justice, and the social order above one's own self interest or petty loyalties. "To hold otherwise would be contrary to the public interest, in that it would penalize the law-abiding citizen and give comfort to the law violator." *Connelly v. McKay*, 28 N.Y.S.2d 327, 329 (Sup. Ct. 1941). Accordingly, we conclude that the untrue statement that the plaintiff testified against his criminal associate cannot be reasonably construed as defamatory.

### III

Next, the plaintiff argues that the trial court erred in denying his motion to amend his writ to include a stand-alone cause of action for negligence. The proposed amendment stated the same facts as those of the defamation claim but added that the Telegraph "owed a duty to . . . citizens mentioned in [its] articles to be accurate in [its] reporting and publication"; "negligently and/or recklessly published the article"; and, "[a]s a proximate result of the above-mentioned conduct, the plaintiff . . . was assaulted and beaten by other inmates at the prison." The trial court determined that the "proposed amendment would be futile and would not cure the reasons for dismissal" because the defamation claim and the negligence-only claim "are one in the same." As noted, our standard of review on a motion to dismiss is whether the allegations in the petitioner's pleadings are reasonably susceptible of a construction that would permit recovery. *Gen. Insulation Co.*, 159 N.H. at 611.

Pursuant to RSA 514:9 (2007), a trial court may permit a substantive amendment to pleadings "in any stage of the proceedings, upon such terms as the court shall deem just and reasonable, when it shall appear to the court that it is necessary for the prevention of injustice." Accordingly, liberal amendment of pleadings is permitted unless the changes would surprise the opposing party, introduce an entirely new cause of action, or

call for substantially different evidence. *Tessier v. Rockefeller*, 162 N.H. 324, 340 (2011). An amendment may also be denied if it would not cure the defect in the writ. Id. Whether to allow a party to amend his or her pleadings rests in the sound discretion of the trial court, and we will not disturb the trial court's decision absent an unsustainable exercise of discretion. *Id.*

■ We disagree with the trial court's conclusion that the plaintiff's defamation claim and his negligence claim constitute the same cause of action. Although the trial court concluded that the proposed amendment "would not cure the reasons for dismissal," the defect in the original writ had nothing to do with negligence. Rather, the original writ's defect was that the complained-of statement, though false, may not reasonably be construed to have a defamatory meaning. Neither the trial court's nor our analysis of the defamation claim expresses any opinion as to the viability of a claim for negligence, as a stand-alone cause of action. Fairly read, and bearing in mind that we "construe all reasonable inferences in the light most favorable to" the plaintiff's pleadings, *Gen. Insulation Co.*, 159 N.H. at 611, the amended declaration seeks to advance a claim of ordinary negligence.

■■ Although we disagree with the trial court's rationale for denying the motion to amend, we decline to address, in the first instance, whether the plaintiff's allegations are "reasonably susceptible of a construction that would permit recovery." *Dupont v. Aavid Thermal Technologies*, 147 N.H. 706, 709 (2002). While we have, under "special circumstances," permitted recovery against a defendant whose actions created a sufficiently foreseeable risk of criminal misconduct by a third party, *see Remsburg v. Docusearch*, 149 N.H. 148, 155 (2003), the parties have not addressed the issue of third-party liability in their briefs. Nor, in the absence of briefing on the issue, can we say whether the plaintiff's negligence claim would withstand First Amendment scrutiny or other challenges regarding the type of claim alleged. *See generally New York Times Co. v. Sullivan*, 376 U.S. 254 (1964); *Hyde v. City of Columbia*, 637 S.W.2d 251 (Mo. Ct. App. 1982); *Olivia N. v. National Broadcasting Co. Inc.*, 178 Cal. Rptr. 888 (Ct. App. 1981). Furthermore, whether to allow the plaintiff to amend his writ to add a cause of action for negligence is a matter that rests in the sound discretion of the trial court, *see Tessier*, 162 N.H. at 340, which is in a better position to determine in the first instance whether it is "necessary for the prevention of injustice," RSA 514:9. Accordingly, we affirm the trial court's

grant of the Telegraph's motion to dismiss the defamation claim, but vacate the denial of the plaintiff's motion to amend, and remand to the trial court for additional proceedings.

*Affirmed in part; vacated in part; and remanded.*

DALIANIS, C.J., and CONBOY, LYNN and BASSETT, JJ., concurred.