NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2018-0517


JAMES G. BOYLE, INDIVIDUALLY AND AS TRUSTEE & a.

v.

MARY CHRISTINE DWYER

Argued: April 18, 2019
Opinion Issued: August 16, 2019


Law Offices of John Kuzinevich, of Duxbury, Massachusetts (John Kuzinevich on the brief and orally), for the plaintiffs.


Gallagher, Callahan & Gartrell, P.C., of Concord (Charles P. Bauer and Weston R. Sager on the brief, and Mr. Bauer orally), for the defendant.


LYNN, C.J. The plaintiffs, James G. Boyle, individually and as trustee of 150 Greenleaf Avenue Realty Trust, and Minato Auto, LLC, appeal an order of the Superior Court (Schulman, J.) dismissing their defamation claim against the defendant, Mary Christine Dwyer. They challenge the trial court's application of the pertinent law in assessing their claim, and assert that they pled sufficient facts in their complaint to survive a motion to dismiss. We affirm.

I

The following facts are drawn from the plaintiffs' complaint[1] or are otherwise undisputed by the parties. Boyle is the majority owner and manager of Minato Auto, LLC, which operates a Toyota dealership at 150 Greenleaf Avenue in Portsmouth (the property). The State of New Hampshire sold the property to Boyle, who later discovered that it contained a sewer line owned by the City of Portsmouth (the City). The presence of the municipal sewer line was not clearly indicated on the deed, and has impacted Boyle's plans for developing the property.

Since approximately 2003, Boyle has been involved in numerous disputes with the City. Relevant here is a lawsuit Boyle filed against the City for trespass and nuisance based on the presence of the sewer line on the property. Following a two-week trial, a jury found the City liable to Boyle for damages in excess of $3.5 million. This dispute remains ongoing, as Boyle, alleging errors at trial, maintains that the damages award should have exceeded $10 million. Also relevant to this appeal is a notice of taking, filed in December 2016, in which the City seeks to take by eminent domain approximately one-third of the property, including the portion that contains the sewer line.

In the fall of 2017, the defendant was running for re-election to the Portsmouth city council. During her campaign, she responded to a written questionnaire, captioned "Candidate Survey," which was subsequently published on the website PortsmouthNH.com as part of a "voter's guide." The questionnaire was sent to all of the 18 candidates running for city council that fall. The following question (Question Seven) regarding the dispute between Boyle and the City over the sewer line, along with the defendant's response, was included in the publication:

> **Q7: The council is attempting to take 4.6 acres of land containing a city sewer line from Toyota of Portsmouth owner James Boyle. In March, Boyle said he was seeking about $10 million in a settlement offer, but no settlement was reached.**
>
> > **A) Should the council have settled with Boyle at the amount he requested?**
>
> Certainly not. Mr. Boyle purchased a building on wetlands, which had been sold to him by the N.H. Department of Education; the building was sold because it was sinking. The wetland and the sewer line are clearly marked on the deed to the property. Ever

---

[1] Because this is an appeal from a ruling on a motion to dismiss, we assume the well-pleaded allegations of fact in the complaint to be true, and construe all reasonable inferences from them in the plaintiffs' favor. Ojo v. Lorenzo, 164 N.H. 717, 721 (2013).

since then, he has been trying to get the taxpayers of the city of Portsmouth to pay for his apparent mistake through filing various lawsuits. The city has repeatedly defended taxpayers against these lawsuits. Why would we give Mr. Boyle $10 million of taxpayer money simply to mollify him?

**B) Should the city proceed with efforts to take the land by eminent domain?**

Yes. In a ruling from one of Mr. Boyle's lawsuit attempts to pry money out of Portsmouth taxpayers, the presiding judge suggested the eminent domain remedy to the city, apparently believing that it might end the controversy and stop clogging up the courts. The judge's advice seemed like a feasible direction. The city can then manage that portion of the property, monitor the sewer pipe that runs under a corner of the property, and deal appropriately with the wetlands.

Following the publication of the questionnaire, Boyle sent the defendant a letter alleging that the defendant's response to Question Seven "constitute[s] libel and slander." The letter included a demand that the defendant "issue an immediate retraction indicating that [her] statements were false." The defendant did not respond.

The plaintiffs then filed a complaint against the defendant in the trial court, alleging claims of defamation and interference with existing and prospective contractual relations. In support of their defamation claim, the plaintiffs asserted, as relevant here, that the defendant's response to Question Seven was "false and defamatory," and that it had the effect of "directly injur[ing]" Boyle and his business activities. The defendant filed a motion to dismiss, arguing, among other things, that her statements in response to Question Seven were not actionable for defamation, as they were either statements of fact that were substantially true or did not convey a defamatory meaning, or statements of opinion.

The trial court granted the defendant's motion to dismiss, basing its decision primarily on the protections afforded allegedly defamatory speech under the First Amendment to the United States Constitution. The court also concluded, however, that the plaintiffs' claim would likewise fail under New Hampshire common law, given that the defendant's statements "were limited to (a) statements of uncontested facts, (b) statements of non-defamatory facts and (c) statements of opinion."[2] The plaintiffs filed a motion to reconsider, which the trial court denied, and this appeal followed.

---

[2] In its order, the trial court also dismissed the plaintiffs' claim of interference with contractual relations. The plaintiffs' appeal does not challenge the trial court's dismissal of this claim.

## II

In reviewing a trial court's ruling on a motion to dismiss, our standard of review is whether the allegations in the plaintiffs' pleadings are reasonably susceptible of a construction that would permit recovery. Sanguedolce v. Wolfe, 164 N.H. 644, 645 (2013). We assume the plaintiffs' pleadings to be true and construe all reasonable inferences therefrom in the light most favorable to the plaintiffs. Id. We need not, however, assume the truth of statements in the plaintiffs' pleadings that are merely conclusions of law. Id. We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. Id. In conducting this inquiry, we may also consider documents attached to the plaintiffs' pleadings, documents the authenticity of which are not disputed by the parties, official public records, or documents sufficiently referred to in the complaint. Ojo, 164 N.H. at 721.

To survive the motion to dismiss, the plaintiffs must have alleged facts in their complaint that would show "that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff[s] to a third party, assuming no valid privilege applies to the communication." Sanguedolce, 164 N.H. at 645-46 (quotation omitted).[3] Thus, for us to rule that the trial court erred in granting the defendant's motion to dismiss, the plaintiffs must have alleged facts in their complaint that would show that the defendant's statements in response to Question Seven are statements of fact that are both false and capable of conveying a defamatory meaning. See id. Although this requirement describes actionable statements as statements of "fact," we have explained that an opinion is also actionable for defamation when the opinion "may reasonably be understood to imply the existence of defamatory fact as the basis for the opinion." Thomas v. Telegraph Publ'g Co., 155 N.H. 314, 338 (2007). Whether a given statement can be read as being or implying an actionable statement of fact is a question of law to be determined by the trial court in the first instance, considering the context of the publication as a whole. Id. at 338-39; accord Piccone v. Bartels, 785 F.3d 766, 772 (1st Cir. 2015) ("Whether a statement is a verifiable fact or an opinion can be decided by the court as a matter of law.").

If a challenged statement is one of fact, but also substantially true, it is not actionable for defamation. Simpkins v. Snow, 139 N.H. 735, 740 (1995).

---

[3] We decide this appeal under New Hampshire law, rather than the First Amendment. In so doing, we are cognizant of the limitations placed on the application of state defamation law by the United States Supreme Court, through its interpretation of the First Amendment. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 14-23 (1990) (outlining various limitations); Gray v. St. Martin's Press, Inc., 221 F.3d 243, 248 (1st Cir. 2000) ("[T]he Supreme Court has read the First Amendment . . . to impose additional limitations in defamation cases, whether or not they are also part of state law.").

4

"In the law of defamation, truth is defined as substantial truth, as it is not necessary that every detail be accurate." Thomas, 155 N.H. at 335 (quotation omitted). "In other words, literal truth of a statement is not required so long as the imputation is substantially true so as to justify the gist or sting of the remark." Id. (quotation omitted). Although the substantial truth of a statement is normally a question for the jury, see 53 C.J.S. Libel and Slander; Injurious Falsehood § 276, at 389 (2017), "[w]hen underlying facts as to the gist or sting [of a statement] are undisputed, substantial truth may be determined as a matter of law." Brokers' Choice of America v. NBC Universal, Inc., 757 F.3d 1125, 1137 (10th Cir. 2014) (quotation omitted).

Furthermore, to be actionable for defamation, the challenged statement must be capable of communicating a defamatory meaning. Thomson v. Cash, 119 N.H. 371, 373 (1979). In determining whether a given statement is capable of communicating a defamatory meaning, the following are questions of law for the court: (1) "whether the [statement] was reasonably capable of conveying the particular meaning . . . ascribed to it by the plaintiff"; and (2) "whether that meaning is defamatory in character." Restatement (Second) of Torts § 614 cmt. b at 311 (1977); see also Thomson, 119 N.H. at 374; Blanchard v. Claremont Eagle, Inc., 95 N.H. 375, 378 (1949); Catalfo v. Jensen, 657 F. Supp. 463, 466 (D.N.H. 1987). "Words may be found to be defamatory if they hold the plaintiff up to contempt, hatred, scorn or ridicule, or tend to impair [the plaintiff's] standing in the community.'" Thomas, 155 N.H. at 338 (quoting Burke v. Town of Walpole, 405 F.3d 66, 94-95 (1st Cir. 2005)). "[T]he complained-of language must tend to lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a small minority." Sanguedolce, 164 N.H. at 646 (quotation omitted). In addition, the defamatory meaning must be one that could be ascribed to the words by persons of common and reasonable understanding. Thomson, 119 N.H. at 373.

III

We start by addressing the plaintiffs' claims of error related to the trial court's application of the relevant law in assessing the complaint. First, the plaintiffs assert that the trial court erred by analyzing the actionability of the defendant's sentences individually, rather than considering her response to Question Seven as a whole. We disagree. In Thomas, we were invited by one of the defendants to analyze the substantial truth of "the aggregate of all sentences attributable to" him. Thomas, 155 N.H. at 335. We declined the invitation, concluding instead that the "better view is that the statement giving rise to liability can be one of an individual's remarks or many, while the [publication] as a whole provides important context for evaluating whether the statement is substantially true or an opinion." Id. at 335-36 (quotations omitted). In so doing, we explained that there was "little merit" in adopting a "rule that would allow a defendant to avoid liability by simply couching

5

injurious and baseless sentences in a longer statement." Id. at 336 (quotation omitted). Although Thomas dealt with evaluating the substantial truth of a statement, we have counseled a similar method of review when determining whether a challenged communication constitutes an opinion, see Nash v. Keene Publishing Corp., 127 N.H. 214, 219 (1985) (stating that "[w]hether a given statement can be read as being or implying an actionable statement of fact" must be considered in "the context of the publication as a whole"), or is capable of conveying a defamatory meaning, see Thomson, 119 N.H. at 374 ("Words alleged to be defamatory must be read in the context of the publication taken as a whole."). The trial court's order demonstrates that, although it separated the defendant's response to Question Seven into four statements for the purpose of its analysis, it did so while remaining cognizant of their context within the defendant's response as a whole. Accordingly, we discern no error in the trial court's method of analysis. See Thomas, 155 N.H. at 336.

Second, the plaintiffs take issue with the trial court's application of the requisite standard of review in dismissing their claim. They argue that the trial court erred by: (1) failing to accept the facts alleged in the complaint as true; (2) failing to draw all reasonable inferences from those alleged facts in their favor; and (3) resolving factual disputes in its ruling. We find these contentions unavailing. As demonstrated by its order, the court did not resolve factual issues disputed by the parties, but rather determined, as a matter of law, that the defendant's statements were not actionable. See Nash, 127 N.H. at 219 (stating that before a jury determines if readers actually understood the challenged statements as factual, the court must determine "[w]hether a given statement can be read as being or implying an actionable statement of fact"); Brokers' Choice of America, 757 F.3d at 1137 (stating that substantial truth may be determined as a matter of law when underlying facts as to the "gist or sting" of a statement are undisputed); Thomas, 155 N.H. at 338 ("Only if the Court determines that language is [capable of conveying a defamatory meaning] is there then the question for the jury whether the communication was in fact understood by its recipient in the defamatory sense." (quotation omitted)).

Third, the plaintiffs contend that the trial court erred by taking judicial notice of a fact that was found by another judge in a non-final order — specifically, that the sewer line on the property is clearly marked on the deed. The plaintiffs argue that the trial court was prohibited from taking judicial notice of this fact because it was later rendered moot upon reconsideration of the issue and the underlying case is currently on appeal. We agree with the defendant that any error committed by the trial court in taking judicial notice of this fact was harmless. The trial court's determination that the second and third sentences of the defendant's response, which contained this statement, were not actionable was based on its conclusion that they were not capable of communicating a defamatory meaning. Thus, even assuming the court erred, the error did not affect the outcome. See Appeal of Ann Miles Builder, 150 N.H.

315, 317 (2003) ("Where it appears that an error did not affect the outcome below . . . the judgment will not be disturbed." (quotation omitted)).

IV

We next consider whether the trial court erred in concluding that the complaint did not state a cause of action for defamation.  We address the defendant's response to Question Seven in two parts: her response to Question 7(A) and her response to Question 7(B).  The plaintiffs contend that the trial court erred in dismissing their defamation claim because, when viewed in the light most favorable to them, their "complaint on its face supports a claim upon which relief may be granted."  They argue that the defendant's response to Question Seven contained false factual allegations that conveyed a defamatory meaning.  They also assert that, to the extent the defendant's statements "qualify as opinion," those statements, too, are actionable, as they are based on defamatory fact.  For the reasons stated below, we disagree.

A

Question 7(A), as well as the defendant's response thereto, states:

> **A) Should the council have settled with Boyle at the amount he requested?**
>
> Certainly not.  Mr. Boyle purchased a building on wetlands, which had been sold to him by the N.H. Department of Education; the building was sold because it was sinking.  The wetland and the sewer line are clearly marked on the deed to the property.  Ever since then, he has been trying to get the taxpayers of the city of Portsmouth to pay for his apparent mistake through filing various lawsuits.  The city has repeatedly defended taxpayers against these lawsuits.  Why would we give Mr. Boyle $10 million of taxpayer money simply to mollify him?

The plaintiffs argue that the second and third sentences of the defendant's response to Question 7(A) encompass false statements of fact that are "designed to discredit the soundness of [Boyle's] action in purchasing the property."  Although we agree with the plaintiffs that these sentences encompass statements of fact, we conclude, as did the trial court, that they are not capable of bearing a defamatory meaning.  See Thomson, 119 N.H. at 373 ("In order to be actionable, the language complained of must be defamatory, that is, it must tend to lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a small minority." (quotation omitted)); see also Masson v. New Yorker Magazine, Inc., 832 F. Supp. 1350, 1367 (N.D. Cal. 1993) ("Falsity and defamatory meaning are analytically

7

separate. . . .   Not all false statements are defamatory, and not all defamatory statements are false.").

Although the second and third sentences of the defendant's response to Question 7(A) may be reasonably capable of conveying the meaning ascribed to them by the plaintiffs, see Thomson, 119 N.H. at 374, we do not find that meaning to be defamatory, see Thomas, 155 N.H. at 338 ("Whether a communication is capable of bearing a defamatory meaning is an issue of law for the Court." (quotation and brackets omitted)).  "Words may be found to be defamatory if they hold the plaintiff up to contempt, hatred, scorn or ridicule, or tend to impair [the plaintiff's] standing in the community."  Id. (quotation omitted).  We believe that the facts asserted in these sentences — Boyle purchased a building on wetlands from the New Hampshire Department of Education; the building was sold to him because it was sinking; and the wetland and sewer line were clearly marked on the deed — are not capable of subjecting the plaintiffs to contempt, hatred, scorn or ridicule, or of otherwise impairing their standing in the community.  "'No mere claim of the plaintiff[s] can add a defamatory meaning where none is apparent from the publication itself.'"  Thomson, 119 N.H. at 373 (quoting W. Prosser, Torts § 111, at 749 (4th ed. 1971)).

The plaintiffs next contend that these factual assertions "set the stage for the overall defamation" contained in the defendant's response.  They argue that the defendant defamed them by claiming, in the fourth sentence of her response to Question 7(A), that Boyle "made a mistake in buying the property" and that he has been "wrongfully" suing to recover for that mistake.  Turning first to the defendant's statement that Boyle made a "mistake," we conclude that this word, when read in context, is designed to express an opinion based on fully disclosed facts.  See Phantom Touring, Inc. v. Affiliated Publications, 953 F.2d 724, 730 (1st Cir. 1992).  "Where an expressive phrase, though pejorative and unflattering, cannot be objectively verified, it belongs squarely in the category of . . . opinion."  Piccone, 785 F.3d at 772 (quotations omitted).  The defendant's conclusion that Boyle made a "mistake" in purchasing the property is not objectively verifiable.  Unlike the challenged statements in Berard v. Town of Millville, 113 F. Supp. 2d 197, 199, 202 (D. Mass. 2000) (determining that statement by police chief that dispatcher made a "mistake" could "be interpreted to imply that [the dispatcher] failed to follow proper procedure while performing his job"), and Gould v. Maryland Sound Industries, Inc., 37 Cal. Rptr. 2d 718, 727-28 (Ct. App. 1995) (concluding that statement that plaintiff "made a $100,000 error" in the estimation of a bid was "a statement of fact susceptible to proof or refutation by reference to concrete, provable data"), the defendant's use of "mistake" in her response to Question 7(A) did not "imply the existence of undisclosed defamatory facts concerning a sufficiently objective standard of conduct," Piccone, 785 F.3d at 772.

8

"A simple expression of opinion based on disclosed . . . nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is." Restatement (Second) of Torts § 566 cmt. c at 173. When a "defendant bases his expression of a derogatory opinion of the plaintiff on his own statement of facts that are not defamatory, he is not subject to liability for the factual statement." Id. at 175. Moreover, he is also not subject to liability "for the expression of opinion, so long as it does not reasonably indicate an assertion of the existence of other, defamatory, facts that would justify the forming of the opinion." Id.

As shown above, the facts on which the defendant based her opinion that Boyle made a "mistake" were fully disclosed. The defendant explained that Boyle purchased a building from the State that was sold because it was sinking, and that the wetland and the sewer line were clearly marked on the deed to the property. Furthermore, these statements of fact were not capable of defaming the plaintiffs. See Thomas, 155 N.H. at 338 (stating that words are found to be defamatory "if they hold the plaintiff up to contempt, hatred, scorn or ridicule, or tend to impair [the plaintiff's] standing in the community" (quotation omitted)). In addition, there was no implication by the defendant that her statement was based on other, nondisclosed defamatory facts. See Restatement (Second) of Torts § 566 cmt. c at 175. "When the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts." Standing Committee v. Yagman, 55 F.3d 1430, 1439 (9th Cir. 1995).

To the extent the plaintiffs argue that the fourth sentence of the defendant's response to Question 7(A) incorrectly implies that they have been "wrongfully" suing the City to recover for Boyle's mistake, any such implication, if present at all, is one of opinion. The defendant's belief that Boyle has made a mistake in purchasing the property, and is therefore wrongfully suing the City to recover for that mistake, is a subjective point of view based on disclosed facts. As the trial court pointed out, the defendant does not, for example, (1) allege that the plaintiffs' lawsuit lacks legal merit, (2) dispute the validity of the court's judgment in the plaintiffs' favor, (3) claim that the plaintiffs were dishonest or misled the court, or (4) assert litigation misconduct. In other words, any implication of wrongfulness by the defendant does not accuse the plaintiffs of violating an "objective standard of conduct." Piccone, 785 F.3d at 772. Rather, it simply expresses her "personal judgment, which is subjective in character." Id. (quotation omitted). Moreover, as with the defendant's comment that Boyle made a "mistake," the facts upon which she based this judgment are disclosed and do not convey a defamatory meaning; nor does the statement itself imply the existence of "other, defamatory, facts." Restatement (Second) of Torts § 566 cmt. c at 175.

9

The plaintiffs also challenge the facts asserted in sentences four and five of the defendant's response to Question 7(A). Specifically, they contend that the following statements by the defendant are false: (1) Boyle "has been trying to get the taxpayers of the city of Portsmouth to pay for his apparent mistake through filing various lawsuits"; and (2) "[t]he city has repeatedly defended taxpayer[s] against these lawsuits." Although we agree that these sentences contain statements of verifiable fact, we conclude that they are not actionable for defamation because the "gist or sting" of the facts asserted is undisputed by the plaintiffs. See Brokers' Choice of America, 757 F.3d at 1137.

As determined above, the defendant's statement that Boyle made a "mistake" in purchasing the property is a nonactionable opinion statement. Thus, the "gist or sting" of the factual statements in the fourth and fifth sentences of the defendant's response to Question 7(A) is that the plaintiffs are involved in ongoing litigation with the City over the sewer line. In their complaint, the plaintiffs agree that Boyle has been involved in "numerous disputes" with the City. They further allege that "[o]ne of the largest" of those disputes has resulted in a jury award in excess of $3.5 million. In addition, they acknowledge that this lawsuit is ongoing, given Boyle's allegations "that there were certain errors in trial and the verdict should have exceeded [$10 million]." In light of the plaintiffs' own factual assertions in their complaint, we conclude that the "gist or sting" of the factual allegations in the fourth and fifth sentences of the defendant's response to Question 7(A) is undisputed. Based on this determination, we conclude that the factual statements in these sentences are substantially true. See Brokers' Choice of America, 757 F.3d at 1137.

Next, we turn to the last sentence of the defendant's response to Question 7(A). Although the plaintiffs concede that this sentence is an "opinion statement," they argue that, "when read after the false facts" that precede it, the defendant's response to Question 7(A) portrays him as an "unscrupulous rascal," and results in a "negative picture" that is "detrimental" to his business. Because the plaintiffs concede that this is an opinion statement, it is actionable only if it implies the existence of an undisclosed defamatory fact. See Thomas, 155 N.H. at 338; Restatement (Second) of Torts § 566 cmt. c at 175. We conclude that it does not. The opinion expressed in the final sentence of the defendant's response to Question 7(A) is that the City should not settle with Boyle for $10 million. As with the defendant's opinion that Boyle made a "mistake" in purchasing the property, the facts upon which she based this opinion are fully disclosed in the preceding sentences of her response. See id. (stating that if the defendant bases his expression of opinion on his own statement of facts that is either true or does not convey a defamatory meaning, he is not subject to liability for the factual statement or the expression of opinion). In addition, there is no implication that the defendant's opinion is based on "other, defamatory, facts." Id.

10

The plaintiffs next contend that the defendant's statements of fact, although false, were reasonably perceived by readers as true because, as a sitting city councilor, the defendant appeared to be in possession of objectively verifiable facts about the litigation over the sewer line. This argument is meritless, however, because, as determined above, the defendant's factual statements are not actionable for defamation as a matter of law, as they either were not capable of communicating a defamatory meaning or were substantially true.

In addition, the context of the defendant's statements offers further support for our conclusion that certain statements by the defendant qualified as nonactionable opinion statements. Partington v. Bugliosi, 56 F.3d 1147, 1154 (9th Cir. 1995) (explaining that defendant's book was "a forum in which a reader would be likely to recognize that [his] critiques . . . generally represent[ed] the highly subjective opinions of the author rather than assertions of verifiable, objective facts"); Moldea, 22 F.3d at 314 (stating that "it is in part the settings of the speech in question that . . . helps determine the way in which the intended audience will receive them"). The defendant's responses to the questionnaire were published as part of a series in which candidates running for election for city council were asked questions, generated by the staff at PortsmouthNH.com and its readers, on local issues. According to the webpage on which the defendant's responses appeared, the questionnaire was sent to all of the 18 candidates who were running in the Fall 2017 election. Because the questionnaire was compiled as part of a candidate survey, it is clear that the purpose of the questionnaire was to make readers aware of the candidates' stance on certain issues that might affect them, rather than to report on the facts surrounding those issues.

B

Question 7(B), as well as the defendant's response thereto, states:

**B) Should the city proceed with efforts to take the land by eminent domain?**

Yes. In a ruling from one of Mr. Boyle's lawsuit attempts to pry money out of Portsmouth taxpayers, the presiding judge suggested the eminent domain remedy to the city, apparently believing that it might end the controversy and stop clogging up the courts. The judge's advice seemed like a feasible direction. The city can then manage that portion of the property, monitor the sewer pipe that runs under a corner of the property, and deal appropriately with the wetlands.

On appeal, the plaintiffs challenge the defendant's response to Question 7(B) as containing false statements of fact. We conclude, however, that the

11

"gist or sting" of the defendant's factual statements in her response to Question 7(B) is undisputed, and thus substantially true. Brokers' Choice of America, 757 F.3d at 1137. The "gist or sting" of the factual assertions in the defendant's response to Question 7(B) is that the judge presiding over the sewer line litigation suggested eminent domain as a potential way to end the dispute. Although the plaintiffs' complaint quibbles with the scope of the eminent domain remedy suggested by the judge, the precise number of lawsuits encompassed in the litigation over the sewer line, and how much of the sewer line runs under the property, none of these allegations contradict the "gist or sting" of the defendant's factual assertions in her response to Question 7(B). See 53 C.J.S. Libel and Slander; Injurious Falsehood § 276, at 389 (stating that the substantial truth of facts deemed undisputed is not affected by any variance in allegations of fact concerning matters of "secondary importance"). Indeed, the plaintiffs do not dispute that a judge suggested Boyle and the City resolve their litigation over the sewer line through eminent domain.

V

We decline to address the parties' other arguments on appeal, as we have already determined that the plaintiffs' complaint failed to allege facts that would show that the defendant's statements were actionable for defamation. Given this determination, we affirm the trial court's dismissal of the plaintiffs' defamation claim.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

12