# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2020-0100, <u>Dale Mansfield & a. v. Ronald Arsenault & a.</u>, the court on January 8, 2021, issued the following order:**

Having considered the briefs and oral arguments of the parties, we conclude that a formal written opinion is unnecessary in this case. Two of the defendants, Engel Entertainment, Inc. and Discovery Communications, LLC, appeal an order of the Superior Court (<u>Howard</u>, J.) denying their motion to dismiss the plaintiffs' false-light invasion of privacy claim. We reverse and remand.

The following relevant facts are found either in the plaintiffs' allegations, which we accept as true, or in the trial court's orders, recited in the light most favorable to the plaintiffs. <u>See</u> <u>Alward v. Johnston</u>, 171 N.H. 574, 576 (2018). The defendants produce and air a reality television series called "North Woods Law," which features the enforcement work of the New Hampshire Fish & Game Department conservation officers. In February 2018, the defendants aired an episode of the series that included a segment about an investigation into an illegal marijuana grow in New Durham. The plaintiffs, Dale and Anne Mansfield, lived near the area where the officers located the marijuana. As part of the investigation portrayed during the episode, a conservation officer, along with a local police officer, approached the plaintiffs outside their residence and questioned them about the grow. The plaintiffs cooperated and denied any knowledge of the marijuana plants that had been seized by the officers. This short exchange between the officers and the plaintiffs was recorded and aired as part of the episode, which also mentioned the subsequent arrest of the plaintiffs' neighbor in connection with the grow. Although their faces were blurred in the episode, the plaintiffs alleged that several family members and acquaintances had easily recognized them after viewing the episode.

In January 2019, the plaintiffs sued the defendants, among others, alleging that the defendants invaded their privacy by portraying them in a false light and appropriating their images and likenesses for commercial benefit. The plaintiffs also alleged a violation of New Hampshire's consumer protection laws. The defendants moved to dismiss the complaint in its entirety, arguing, in relevant part, that the plaintiffs failed to state a claim for relief and that the defendants' conduct was constitutionally protected.

The trial court dismissed all of the claims in the complaint, except the false-light invasion of privacy claim. After correctly noting that we have not

recognized false-light invasion of privacy as a cause of action, see Thomas v. Telegraph Publ'g Co., 151 N.H. 435, 440 (2004), the trial court nonetheless applied the definition of false light contained in the Restatement (Second) of Torts § 652E, at 394 (1977), which states, in relevant part:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

The trial court determined that, because the footage did not "clearly exculpate" the plaintiffs, the episode falsely suggested that the plaintiffs were involved in the marijuana grow. The trial court also declined to address the defendants' constitutional arguments, stating in a footnote that "the elements of a false light claim are designed to protect such rights." The defendants' interlocutory appeal followed.

On appeal, the defendants argue that the trial court erred by: (1) recognizing false light as a cause of action; (2) failing to dismiss the plaintiffs' false-light claim on grounds that it violated the defendants' constitutionally-protected free speech and free press rights; and (3) misapplying the elements of fault and falsity to the plaintiffs' false-light claim. We need not decide whether to recognize false light as a cause of action, because if we apply the definition of false light in the Restatement (Second) of Torts § 652E, we conclude that the plaintiffs have failed to adequately state a claim for relief. Because this conclusion requires that we reverse and remand, we need not address the remaining issues raised in the defendants' appeal.

In reviewing a trial court's rulings on a motion to dismiss, we must determine whether the allegations in the complaint are reasonably susceptible of a construction that would permit recovery. Automated Transactions v. Am. Bankers Ass'n, 172 N.H. 528, 532 (2019). We assume the plaintiffs' pleadings to be true and construe all reasonable inferences in the light most favorable to the plaintiffs. Id. We need not, however, assume the truth of statements that are merely conclusions of law. Id. We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law, and if the allegations provide a basis for legal relief, we will uphold the denial of a motion to dismiss. See Tosta v. Bullis, 156 N.H. 763, 766 (2008). In conducting this inquiry, we may also consider documents attached to the plaintiffs' pleadings, documents the authenticity of which are not disputed by the parties, or

documents sufficiently referenced in the complaint.  Automated Transactions, 172 N.H. at 532.

To prevail on a false-light claim as set forth in Restatement (Second) of Torts, the plaintiff must show that the defendant published material containing some falsity about the plaintiff.  See Restatement (Second) of Torts § 652E cmt. a at 395 ("[I]t is essential . . . that the matter published concerning the plaintiff is not true."); see also Hamberger v. Eastman, 106 N.H. 107, 110-11 (1964) (observing that false light "requires falsity or fiction").  Falsity can arise when the defendant publishes false information about the plaintiff, see Talley v. Time, Inc., 923 F.3d 878, 894 (10th Cir. 2019), or when the publication of true information creates a false impression about the plaintiff, see Douglass v. Hustler Magazine, Inc., 769 F.2d 1128, 1137-38 (7th Cir. 1985).  In reviewing the trial court's decision, we may determine, as a matter of law, whether the published material portrayed the plaintiffs in a false light.  See Fudge v. Penthouse Intern., Ltd., 840 F.2d 1012, 1018-19 (1st Cir. 1988); see also Sanguedolce v. Wolfe, 164 N.H. 644, 647 (2013) (concluding as a matter of law that false statements concerning the plaintiff "cannot be reasonably construed as defamatory").

The plaintiffs do not allege that the defendants made any false statements of fact about them in the episode.  Nor do the plaintiffs allege that the defendants altered the footage to make them appear complicit or otherwise responsible for the marijuana grow.  Instead, the plaintiffs claim that the episode, when viewed as a whole, created the false impression that they were involved in illegal drug activity.  This implication, the plaintiffs argue, was "highly offensive" to them.

Based upon the allegations in the complaint, as well as the version of the episode contained in the record, we conclude that the episode did not falsely imply that the plaintiffs were involved in illegal drug activity.  During the episode, the officers described setting up video surveillance of the marijuana grow from which they obtained photographic images of the suspect they believed was responsible for the illegal operation.  Prior to meeting the plaintiffs, the conservation officer stated, on camera, that, based upon the photographic images, he would "be able to identify [the suspect] right away." Thereafter, during the segment of the episode that portrayed the officers' initial exchange with the plaintiffs, the conservation officer addressed the camera immediately after meeting the plaintiffs and stated that his "first impression" was that "this isn't our guy."  The episode then showed the plaintiffs denying any knowledge of the marijuana and answering questions about their neighbor, who the officers believed was responsible for the grow.  The officers later stated that the surveillance photographs clearly matched photographs of the neighbor located on social media, providing sufficient evidence for the officers to seek an arrest warrant.  Before concluding, the episode revealed that the neighbor was arrested in connection with the grow.  Even if, as the trial court concluded, the

footage did not "clearly exculpate" the plaintiffs, the episode placed responsibility for the illegal activity squarely on the neighbor, rather than on the plaintiffs. Therefore, because the episode did not provide the false implication that the plaintiffs claim, the plaintiffs have not adequately pled the element of falsity.

Furthermore, we conclude that no reasonable person would have perceived the episode as highly offensive. See Restatement (Second) of Torts § 652E cmt. c at 396 (explaining that false light applies "only when publicity given to the plaintiff has placed him in a false light before the public of a kind that would be highly offensive to a reasonable person"). Because the officers pointed to the neighbor, rather than the plaintiffs, as the suspect in the surveillance photographs, the episode did not ascribe any wrongdoing to the plaintiffs. See Franchise Tax Bd. of State of CA v. Hyatt, 407 P.3d 717, 736 (Nev. 2017) (concluding that an out-of-state tax board's demands for information from third parties concerning the plaintiff's tax audit did not portray him as a "tax cheat," and, in any event, were not highly offensive to a reasonable person (quotation omitted)), rev'd on other grounds, 139 S. Ct. 1485 (2019). Moreover, no reasonable person would perceive the plaintiffs' willingness to assist officers in an ongoing criminal investigation as highly offensive. See Sanguedolce, 164 N.H. at 646-47 (rejecting the plaintiff's argument that "a false statement that a person cooperated with authorities in bringing another person to justice may constitute defamation"). "[T]here are some shocks, inconveniences and annoyances which members of society in the nature of things must absorb without the right of redress." Thomason v. Times-Journal, Inc., 379 S.E.2d 551, 554 (Ga. App. 1989) (quotation omitted).

For the foregoing reasons, we conclude that, even if we were to recognize a false-light invasion of privacy cause of action, as set forth in § 652E of the Restatement (Second) of Torts, the plaintiffs have failed to adequately allege two elements of false light as defined therein. Therefore, the trial court erred by denying the defendants' motion to dismiss for failure to state a claim.

Reversed and remanded.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**

4