NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
Case No. 2024-0181
Citation: Ortolano v. City of Nashua, 2025 N.H. 23

LAURIE ORTOLANO

v.

CITY OF NASHUA & a.

Submitted: February 6, 2025
Opinion Issued: May 29, 2025

Laurie Ortolano, self-represented party, on the brief.

McLane Middleton, of Manchester (Joseph A. Foster and Graham W. Steadman on the brief), for defendant NPAC Corp.

Upton & Hatfield, LLP, of Portsmouth (Russell F. Hilliard, on the memorandum of law) and City of Nashua Office of Corporation Counsel, of Nashua (Steven A. Bolton, Celia K. Leonard, and Jonathan A. Barnes, on the memorandum of law), for defendant City of Nashua.

Gary A. Braun, self-represented party, on the brief, as amicus curiae.

COUNTWAY, J.

[¶1] The plaintiff, Laurie Ortolano, appeals orders of the Superior Court (Temple, J.) dismissing her complaint under the Right-to-Know Law, RSA chapter 91-A, that sought to compel the defendants, the City of Nashua (the City) and NPAC Corp. (NPAC), to produce certain records, and denying her motion to amend her complaint. We affirm in part, vacate in part, and remand.

[¶2] The pertinent facts are as follows. In 2018, the City approved a bond resolution to construct a performing arts center (the center). Complications with the financing arose and, in order to take advantage of a federal tax credit, the City formed two non-profit corporations (the 201 corporations). In 2020, an additional corporation, NPAC, was formed as a private, for-profit corporation to aid in the federal tax credit process. NPAC is wholly owned by one of the 201 corporations, 201 Main Street Real Estate Corporation (201 Real Estate), which is in turn owned by the City. The plaintiff requested "all NPAC public records" related to the center and NPAC responded that "[a]s a private corporation" it was "not subject to RSA 91-A." The plaintiff subsequently filed a complaint against the defendants seeking access to public records pursuant to RSA chapter 91-A. See RSA ch. 91-A (2023 & Supp. 2024).

[¶3] The City and NPAC each filed motions to dismiss. NPAC argued that it was not a public entity subject to RSA chapter 91-A records requests. The City argued that, because the relief requested as to the City was "derivative from the premise that RSA chapter 91-A applies to NPAC," "dismissal of NPAC Corporation should result in dismissal against the City." Prior to the hearing, the plaintiff moved to amend her complaint to allege constitutional violations under Part I, Article 8 of the New Hampshire Constitution.

[¶4] The trial court held a hearing on the parties' pending motions, and issued an order granting the defendants' motions to dismiss. The court reasoned that under the plain language of the statute NPAC was not subject to RSA chapter 91-A, and there did not "seem to be any independent claim lodged against the City for specific records belonging to the City." The trial court additionally denied the plaintiff's motion to amend without prejudice because she had failed to attach a proposed amended complaint to her motion. The plaintiff moved for reconsideration and renewed her motion to amend her complaint. The trial court denied both motions, and this appeal followed. The plaintiff appeals both the trial court's dismissal of her claims against NCAP and the City and its denial of her motion to amend.

[¶5] In reviewing an order granting a motion to dismiss, we assume the truth of the facts as alleged in the plaintiff's pleadings and construe all

2

reasonable inferences in the light most favorable to the plaintiff.  Hynes v. N.H. Democratic Party, 175 N.H. 781, 786 (2023).  We need not, however, assume the truth of statements in the plaintiff's pleadings that are merely conclusions of law.  Granite State Trade Sch. v. N.H. Mechanical Licensing Bd., 175 N.H. 708, 710 (2023).  The standard of review in considering a motion to dismiss is whether the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery.  Hynes, 175 N.H. at 786.  This threshold inquiry involves testing the facts alleged in the pleadings against the applicable law.  Id.  We may also consider documents attached to the plaintiff's pleadings, as well as documents the authenticity of which the parties do not dispute, official public records, and documents sufficiently referred to in the complaint.  See id.  We will uphold the granting of the motion to dismiss if the facts pled do not constitute a basis for legal relief.  Id.

[¶6] As a threshold matter, we agree with the trial court that the plaintiff's complaint failed to state a claim against the City.  Those portions of the complaint that the plaintiff cites to on appeal to support her argument that the trial court erred when it granted the City's motion to dismiss do not allege facts sufficient to establish an independent claim against the City.  Nor does the plaintiff's complaint contain a prayer for relief against the City.  Rather, it requests that the trial court "order the City" to "make available public records held with the NPAC."  Accordingly, the trial court did not err when it granted the City's motion to dismiss.  See In re Guardianship of Raymond B., 163 N.H. 502, 504 (2012) ("[W]e review the grant of a motion to dismiss by determining whether the petitioners' allegations are reasonably susceptible of a construction that would permit the relief sought.").

[¶7] Having affirmed the trial court's grant of the City's motion to dismiss, we turn to the plaintiff's two primary arguments on appeal: (1) that the trial court erred when it failed to apply the "government function" test to determine whether NPAC was a "public body" subject to RSA chapter 91-A; and (2) that the trial court erred when it denied her renewed motion to amend her complaint.  We turn first to the trial court's failure to apply the "government function" test.

[¶8] The plaintiff argues that the trial court erred by effectively overruling our pre-2008 caselaw applying the "government function" test when it granted NPAC's motion to dismiss based on the plain language of RSA 91-A:1-a, VI(e).  NPAC counters that it was unnecessary to apply the "government function" test because the plain language of RSA 91-A:1-a, VI(e) is dispositive.  We agree with the plaintiff.

[¶9] Resolving the issues on appeal requires us to interpret our Right-to-Know Law, which is a question of law that we review de novo.  Martin v. City of Rochester, 173 N.H. 378, 382 (2020).  The ordinary rules of statutory

construction apply to our review of the Right-to-Know Law. Am. Civil Liberties Union of N.H. v. N.H. Div. of State Police, 176 N.H. 302, 306 (2023). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. Id. We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We also interpret a statute in the context of the overall statutory scheme and not in isolation. Id. We resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate the law's statutory and constitutional objectives. Id.

[¶10] Part I, Article 8 of the New Hampshire Constitution provides that "the public's right of access to governmental proceedings and records shall not be unreasonably restricted." N.H. CONST. pt. I, art 8. The Right-to-Know Law provides that citizens have "the right to inspect all governmental records in the possession, custody, or control of such public bodies or agencies" as defined by RSA 91-A:1-a. RSA 91-A:4, I (Supp. 2024); see also RSA 91-A:1-a (2023) (definitions). It was enacted "to ensure . . . the greatest possible public access to the actions, discussions and records of all public bodies." RSA 91-A:1. In the past, when we were confronted with an entity that was not easily characterized as either "solely private or entirely public," we examined the structure and function of the entity to assess the entity's relationship to government and determine whether "[the] entity is conducting the public's business." Prof'l Firefighters of N.H. v. Local Gov't Ctr., 159 N.H. 699, 703-06 (2010) (Professional Firefighters II) (quotation omitted) (applying government function test); see also RSA 91-A:1-a, V (defining "public agency"), VI (defining "public body").

[¶11] In 2008, the legislature added government-owned, non-profit corporations to the definition of "public body." See Laws 2008, 278:3. RSA 91-A:1-a, VI(e) provides that:

> Any corporation that has as its sole member the state of New Hampshire, any county, town, municipal corporation, school district, school administrative unit, village district, or other political subdivision, and that is determined by the Internal Revenue Service to be a tax exempt organization pursuant to section 501(c)(3) of the Internal Revenue Code [is a "public body"].

NPAC argues that it was unnecessary for the trial court to conduct a "government function" analysis because, through the addition of RSA 91-A:1-a, VI(e), the legislature "clarified that [RSA chapter 91-A] applied to a narrow subset of corporations — government owned tax-exempt corporations," and that the "Right-to-Know Law does not apply to NPAC because NPAC is a domestic profit corporation that is owned by 201 Real Estate and not the City."

This conclusion, however, flows from the flawed logic that because RSA 91-A:1-a, VI(e) provides that government-owned, non-profit corporations <u>are</u> subject to RSA chapter 91-A, all other corporate structures <u>are not</u>. The plain language of the statute simply specifies another type of organization that is subject to the Right-to-Know Law. Accordingly, given that NPAC is a for-profit corporation owned by 201 Real Estate, the plain language of the statute does not directly control here.

[¶12] Nor has our "government function" test been abrogated with respect to entities such as NPAC, which do not fall within the definition of "public body" set forth in RSA 91-A:1-a, VI(e). Paragraph VI(e) of RSA 91-A:1-a does not directly conflict with any of our pre-2008 caselaw that applied the "government function" test to determine whether an entity was a "public body" subject to the Right-to-Know Law. See, e.g., <u>Professional Firefighters II</u>, 159 N.H. at 705-06 (concluding that tax-exempt LLC and tax-exempt corporation owned by a governmental entity subject to RSA chapter 91-A were public bodies subject to the Right-to-Know Law under our "government function" test). Additionally, we have not overruled our cases applying the "government function" test or stated that we would no longer apply that test. See <u>Martin</u>, 173 N.H. at 384 (applying plain language of statute to find that city's "technical review group" was a "public body" but remaining silent as to "government function" test and citing <u>Bradbury v. Shaw</u>, 116 N.H. 388, 389-90 (1976) (superseded by statute on other grounds), which applied the "government function" test, to support our analysis). Accordingly, the trial court erred when it granted NPAC's motion to dismiss based on the language of RSA 91-A:1-a, VI(e).

[¶13] We turn next to the plaintiff's argument that the trial court erred when it denied her renewed motion to amend her complaint. A trial court may permit a substantive amendment to pleadings at any stage of the proceedings, upon such terms as the court shall deem just and reasonable, when it shall appear to the court that it is necessary for the prevention of injustice. <u>Sanguedolce v. Wolfe</u>, 164 N.H. 644, 647 (2013). Accordingly, liberal amendment of pleadings is permitted unless the changes would surprise the opposing party, introduce an entirely new cause of action, or call for substantially different evidence. <u>Id</u>. at 647-48. An amendment may also be denied if it would not cure the defect in the pleading. See <u>id</u>. at 648. Whether to allow a party to amend his or her pleadings rests in the sound discretion of the trial court, and we will not disturb the trial court's decision absent an unsustainable exercise of discretion. <u>Id</u>.

[¶14] Here, the plaintiff initially moved to amend her complaint to "strengthen the issues involving constitutional violations" under Part I, Article 8 of the New Hampshire Constitution. The plaintiff's proposed amended complaint, however, did not allege any constitutional violations. Rather, it re-

5

asserted RSA chapter 91-A claims against NPAC.  Therefore, it did not cure any defect in the pleading and the trial court did not unsustainably exercise its discretion when it denied the plaintiff's renewed motion to amend her complaint.  <u>See</u> <u>id</u>.

[¶15] Accordingly, we affirm the trial court's grant of the City's motion to dismiss and its denial of the plaintiff's motion to amend her complaint, vacate its grant of NPAC's motion to dismiss, and remand for the trial court to apply the "government function" test in the first instance.  In light of our decision, we need not address the plaintiff's remaining arguments.

<u>Affirmed in part; vacated in part; and remanded</u>.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred.